[Civ. No. 13990.    First Dist., Div. One.    June 8, 1949.]

Estate of FREDERICK OLOF LARSON, Deceased. W. H. MERRICK, Appellant, v. GEORGIA MAY LARSON, Respondent.

Robert E. Hatch, Raymond D. Williamson and Stanley M. Fernwood for Appellant.

Gavin McNab, Schmulowitz, Aikins, Wyman & Sommer, Nat Schmulowitz, Peter S. Sommer and Sidney F. DeGoff for Respondent.

PETERS, P. J.—This is an appeal from an order and judgment made under section 1020.1 of the Probate Code determining that an assignment by Georgia May Larson to appellant of a portion of her interest in the estate of Frederick O. Larson was null and void.

At the threshold of this appeal we are met with a dispute over what constitutes the record on appeal. The appellant filed a timely notice of appeal. He could then have had prepared a total or partial reporter's transcript, or an agreed or settled statement, or he could have elected to proceed on the clerk's transcript alone. The latter type of appeal is usually referred to as a judgment roll appeal. On such an appeal since "the evidence is not before this court, we are confined to a determination of the questions as to whether the complaint states a cause of action; whether the findings are within the issues; whether the judgment is supported by the findings and whether reversible error appears upon the face of the record." (*Montaldo* v. *Hires Bottling Co.*, 59 Cal.App.2d 642, 646 [139 P.2d 666].)

After filing the notice of appeal appellant, within the time permitted by the Rules on Appeal, filed an election to proceed by a settled statement in lieu of a reporter's transcript, and gave proper instructions to have prepared a clerk's transcript. He, thereafter, failed to comply with the provisions of rule 7, and abandoned all efforts to secure a settled statement. A clerk's transcript was prepared and filed.

After the clerk's transcript had been filed, appellant, purporting to act under rule 5, filed with the clerk of the trial court a so-called "designation" of documents to be transmitted to the appellate court. In this fashion appellant seeks to have considered on this appeal a portion of the oral pro-

ceedings, including depositions of witnesses, and seeks to have such depositions and other documents transmitted to this court in direct violation of rule 5(e). It is the theory of the appellant that this court should now consider, as the record on appeal, the clerk's transcript proper, that is, the judgment roll, all documents, affidavits and exhibits on file in the office of the clerk of the trial court, and some of the oral proceedings, that is, certain depositions used on the trial, even though there has not been prepared, as required by the rules, a total or partial reporter's transcript, or an agreed or settled statement. In his reply brief, and on the oral argument, appellant has referred to portions of this evidence and expects this court to wade through this mass of uncorrelated material and evaluate it without a total or partial reporter's transcript or without a settled or agreed statement. By this confused procedure appellant would have the clerk's transcript type of record imperfectly perform the functions which another, and authorized, type of record might have accomplished.

Such procedure cannot be permitted. An appellant may elect, if he desires a review of the oral proceedings, to secure a total reporter's transcript under rule 4(a), or a partial reporter's transcript by stipulation or designation under rule 4(b), or he may proceed under rule 6 upon an agreed statement, or under rule 7(a) by a settled statement. If he does not desire a review of any portion of the evidence, under rule 5, he may proceed to appeal on a clerk's transcript. That is what was done by appellant here. On such an appeal no portion of the oral proceedings may be considered. This appeal must be treated as a judgment roll appeal, and only those facts appearing in the findings should or will be considered.

Appellant has also filed a motion to augment the record by including a "Stipulation Concerning Respondent's Evidence," dated December 4, 1947. This stipulation could be relevant only if the clerk's transcript were supplemented by one of the authorized methods of presenting, in whole or in part, the oral proceedings. This was not done. The motion to "augment" cannot be used to create a record. Its function is to supplement an incomplete but existing record.

The facts as they appear in the findings are as follows:

*January 18, 1945:* Frederick O. Larson died intestate in, and as a resident of, San Francisco. Prior to his death he had been employed by Libby, McNeill & Libby in San Francisco.

*January 19, 1945:* The San Francisco office of the Libby company telegraphed its Chicago office to examine Larson's employment application and to ascertain whether he had there designated the names of his next of kin. On the same day the Chicago office ascertained that Larson had listed the name of Georgia May Larson, his sister, and whose address was given as Audubon, Minnesota. On the very same day the Chicago office further discovered that Georgia May was then living in apartment 1B, Pullmer Apartments, Winnipeg, Canada. This information was communicated to Libby's San Francisco office on January 20th.

*January 22, 1945:* W. H. Merrick, the appellant, arrived in Winnipeg. Merrick, who has never been admitted to the Bar in any of the United States or in Canada, is a so-called "heir hunter."

*January 23, 1945:* The public administrator of San Francisco, upon petition, was appointed special administrator of Larson's estate, and the hearing on his petition to be appointed general administrator was set for February 9, 1945. On this same day (Jan. 23d) Merrick called upon Georgia May in Winnipeg. At the conclusion of this meeting, Georgia May signed and delivered to Merrick a document which reads, in full, as follows:

"AGREEMENT AND ASSIGNMENT

"WHEREAS, W. H. MERRICK of the City of Detroit and State of Michigan, possesses information indicating that I am the owner of certain property of which I have no knowledge and

"WHEREAS, I wish to obtain from the said W. H. Merrick such information and establish my title to said property, and

"WHEREAS, said W. H. Merrick has expended and will necessarily expend sums of money for my benefit, which disbursements cannot now be ascertained.

"Now, THEREFORE, I hereby employ said W. H. Merrick to take in my name and behalf, all proper measures to establish my interests in and title to said property, and if necessary to employ attorneys to institute proceedings for that purpose.

"In consideration of the said information given, the said services rendered and to be rendered and expenditures made and to be made by the said W. H. Merrick in my behalf, I hereby agree to pay him out of any money or property so recovered, thirty per cent (30%) of the gross amount or value thereof, which share he is hereby authorized to retain.

All proceedings taken shall be at his cost and expense and all disbursements charged against his said share.

"In the event of no recovery, I am to pay him no sum whatsoever. I agree to execute at the request of said W. H. Merrick all instruments and papers necessary to establish or aid to establish my title to said property.

"In consideration of the premises herein and the sum of One Dollar to me in hand paid by the said W. H. Merrick at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, I hereby sell, transfer, set over and assign, to said W. H. Merrick, his heirs, executors, administrators, and assigns, to his or their own proper use and benefit forever, the said thirty per cent (30%) of all property, real or personal, interest of whatsoever kind and of all moneys now due or to become due to me, from the *Estate of Frederick O. Larson now being probated at San Francisco, California.*

"AND I GRANT unto said W. H. Merrick, his heirs, executors, administrators and assigns, full power and authority for his or their own use and benefit, but at his or their own cost to ask, demand, collect, receive, compound and give acquittance for the same or any part thereof, and in my name or otherwise to execute any deed, document or paper that may be necessary in the premises, and to prosecute and withdraw any suit or proceeding at law or in equity therefor. This agreement and assignment to be binding on me and my heirs, executors, administrators and legal representatives.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 23 day of January, A. D. 1945.

"(Signed) Georgia M. Larson.

"In presence of:
"(Signed) A. Ascoe
"(Signed) Jean M. Nelson
"Witnesses—"

When signed by Georgia May the words italicized above had not yet been inserted into the document.

*January 24, 1945:* Merrick again called upon Georgia May, and, pursuant to the provisions of the assignment and agreement, had her sign an authorization empowering a designated San Francicso lawyer to act for her. This lawyer was unknown to Georgia May.

*January 25, 1945:* The Chicago office of the Libby company instructed its San Francisco office to communicate with the Libby company manager in Winnipeg and have him notify Georgia May of the death of her brother, of the value of his estate, and of the pending probate proceedings initiated by the public administrator.

*January 27, 1945:* Georgia May received this information from the Winnipeg manager of Libby. The manager forwarded a report of his conversation with Georgia May to his San Francisco office.

*February 1, 1945:* A copy of the report of the Winnipeg manager was delivered to the office of the public administrator in San Francisco.

*February 21, 1945:* Georgia May, by formal notice served on Merrick, rescinded the agreement and assignment of January 23d.

*July 28, 1945:* Merrick notified the public administrator that he claimed an interest in Larson's estate, and accompanied the notice with a photostatic copy of the agreement and assignment. These were filed with the clerk of the probate court on August 8, 1945.

*August 17, 1945:* Georgia May filed her notice of motion under section 1020.1 of the Probate Code, to inquire into the consideration of the assignment and to have it annulled. Merrick was represented by counsel on the hearing of this motion.

Based on these facts, the court further found, and concluded, that the fees, charges and consideration Georgia May had agreed to pay Merrick were "grossly unreasonable," and that the agreement was not procured by duress, fraud or undue influence. The court also found that on January 23, 1945, when the agreement was signed, Georgia May "was not a missing heir." By its order and judgment the court declared the agreement and assignment of January 23d to be null and void and against public policy, and directed the public administrator to distribute the undistributed balance of the estate to Georgia May free and clear of all claims of Merrick. Merrick appeals.

The form of assignment and agreement here employed by Merrick, although differing in some details, is substantially similar to those used by the heir hunters involved in *Estate of Butler,* 29 Cal.2d 644 [177 P.2d 16, 171 A.L.R. 343], and in *Estate of Reilly,* 81 Cal.App.2d 564 [184 P.2d 922]. Both of these cases held that such agreements constituted an un-

lawful undertaking to engage in the practice of the law by an unlicensed person, and were, therefore, null and void, and violative of the public policy of this state. The fact that the agreement may be to employ counsel and not to act himself as a lawyer does not take the case out of the rule. This is made crystal clear in the following quotation from the Butler case (p. 647): "Operating from his principal office . . . respondent admittedly conducts his business in the following manner: by contacting and soliciting the heirs, securing their authorization to appear for them, and employing counsel to represent them under powers of attorney or assignments. Thus, as a nonlawyer acting for prospective beneficiaries under agreements providing for his paying 'any and all expenses incident to the doing of the things he is authorized to do by said power of attorney, including attorneys' fees and court costs,' respondent assumes complete control of litigation instituted on behalf of the beneficiaries through attorneys hired by him and becomes a 'middleman' intervening for profit in the conduct of legal proceedings. Such procedure amounts to 'commercial exploitation' of the legal profession and is contrary to public policy." This holding was reaffirmed in the Reilly case.

The holding of these cases is clearly controlling here. Even if this were not so, there is another and cumulative reason why the order here involved has to be affirmed. The probate court has found that the consideration agreed to be paid by the heir was "grossly unreasonable," and there is no finding that the services rendered by Merrick were of any value at all. In fact, the findings, including the finding that Georgia May was not a missing heir, demonstrate that Merrick's "services" to Georgia May were valueless. Section 1020.1 of the Probate Code empowers the court, where it finds that the consideration agreed to be paid was grossly unreasonable, to "refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable." Where the consideration is "grossly unreasonable," the burden is upon the heir hunter to prove their real value. (*Estate of Reilly*, 81 Cal.App.2d 564, 569 [184 P.2d 922]; *Estate of O'Donnell*, 85 Cal.App.2d 1, 12, 816 [192 P.2d 94, 193 P.2d 143].) So far as the record shows, Merrick offered no evidence on this issue at all, and, furthermore, the facts found demonstrate the claimed services were worthless.

For either of the two reasons mentioned it is quite apparent that this appeal lacks merit.

274

The motion to augment the record is denied, and the judgment and order appealed from are affirmed.

Ward, J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 4, 1949.