[Civ. No. 26884. Second Dist., Div. Two. Aug. 21, 1963.]

DANIEL T. WILLIAMS, Plaintiff and Respondent, v. INGLEWOOD BOARD OF REALTORS, INC., Defendant and Appellant.

480

David Lynn for Defendant and Appellant.

. Rubin, Small & Juster and Gene L. Rubin for Plaintiff and Respondent.

ASHBURN, J.—In this action for damages for wrongful expulsion from membership in Inglewood Board of Realtors, Inc., plaintiff recovered judgment against defendant Board in the sum of $9,000, and defendant appeals therefrom.

 The record is in such shape as to add substantially to the burden of the court. Appellant's opening brief says: "All points raised on appeal (including the Statement of the Case) are supported by records contained in the Clerk's Transcript and documentary evidence contained in the Exhibits designated for inclusion in the appeal record. . . . The Reporter's Transcript has not been prepared because the oral proceedings are not necessary or relevant to the appeal." Appellant's arguments proceed upon the assumption that the exhibits may be used to establish insufficiency of the evidence and errors of law. This is a mistaken notion and respondent has raised the point, citing pertinent authorities.

 The Rules on Appeal* provide for only four different types of record, namely, (1) clerk's transcript with reporter's transcript (complete or partial), (2) settled narrative statement, (3) agreed statement, and (4) judgment roll alone. (See 3 Witkin, California Procedure, § 126, p. 2303; 3 Cal.Jur.2d § 247, p. 757.) The record before us does not fall within any of these categories although literally it comes within the following language of subdivision (a), rule 5, of California Rules on Appeal**: ". . . including the clerk's minutes and any written opinion of the superior court and exhibits either admitted in evidence or rejected, which he [appellant] desires incorporated in the record on appeal." However, it is clear from the authorities that this language was designed as an aid to simplification and economy in preparation of a reporter's transcript, not as a substitute for same and not as the creation of a hybrid form of record.

 The presentation of a record consisting of judgment roll and exhibits or other papers from the clerk's file without a reporter's transcript was condemned in *Estate of Larson*, 92 Cal.App.2d 267, 269 [206 P.2d 812], wherein the court, speaking through Mr. Presiding Justice Peters, said: "Such procedure cannot be permitted. . . . This appeal must be treated as a judgment roll appeal, and only those facts appearing in the findings should or will be considered."

*Lakeside Park Assn.* v. *Sweeney*, 117 Cal.App.2d 101, 103

---

*Now California Rules of Court.
**Now California Rules of Court, rule 5(a).

[320 P.2d 513] : "Appellant first contends that the findings are contrary to the evidence. There is no record of the oral proceedings or any part thereof. The record on appeal here consists only of the clerk's transcript which contains the judgment roll and copies of some of the documents in evidence. Therefore, in disposing of appellant's contention this appeal must be treated as one on the judgment roll. On such an appeal the question of the sufficiency of the evidence to support the findings is not open. (*Estate of Larson,* 92 Cal.App.2d 267 [206 P.2d 852].) "

The case of *White* v. *Jones,* 136 Cal.App.2d 567, 569 [288 P.2d 913], says: "Appellant does not attack the form of the findings or their sufficiency to support the judgment. His only contention is that the findings (he does not specify which) are contrary to the evidence. Appellant has not taken advantage of either rule 4(a), rule 4(b), rule 6 or rule 7(a) of the Rules on Appeal,† so as to bring to this court the oral proceedings or any part thereof. The record on appeal here consists only of the clerk's transcript which contains the judgment roll and certain documents received in evidence in the court below.

"In disposing of appellant's contention this appeal is therefore to be treated as one on the judgment roll. On such an appeal the question of sufficiency of the evidence to support the findings is not open. (*Estate of Larson,* 92 Cal.App.2d 267 [206 P.2d 852].)

"The judgment here can only be attacked for errors which affirmatively appear upon the face of the judgment roll. Appellant cannot broaden the scope of this court's inquiry by incorporating in the clerk's transcript the documentary evidence received in the court below. (*Hunt* v. *Plavsa,* 103 Cal.App.2d 222 [229 P.2d 482]; *Palpar, Inc.* v. *Thayer,* 83 Cal.App.2d 809 [189 P.2d 752]; *Utz* v. *Aureguy,* 109 Cal.App. 2d 803 [241 P.2d 639]; *Glogau* v. *Hagan,* 107 Cal.App.2d 313 [237 P.2d 329].)

"On an appeal based on a record such as that here, we must presume that in the oral proceedings there was substantial evidence to support the findings. In that inquiry we cannot look beyond the 'facts appearing in the findings' and here it is admitted that those facts support the judgment. (*Transportation Guar. Co.* v. *Jellins,* 29 Cal.2d 242 [174 P.2d 625]; *Hunt* v. *Plavsa, supra.*)

---

†Now California Rules of Court, rules 4(a), 4(b), 6, 7(a).

 "Rules 4(b), 6, 7 and 52 of the Rules on Appeal [*] were designed to make appeals less burdensome and expensive. They were not, however, designed to nor do they broaden the questions that may be raised on a record such as the one here." To the same effect see, *Tibbets* v. *Robb,* 158 Cal.App.2d 330, 337 [322 P.2d 585]; *Garwick* v. *Gordon,* 121 Cal.App.2d 247, 250 [263 P.2d 125]; *Callahan* v. *Chatsworth Park, Inc.,* 204 Cal.App.2d 597, 606 [22 Cal.Rptr. 606]; *Hearst Publishing Co.* v. *Abounader,* 196 Cal.App.2d 49, 56 [16 Cal.Rptr. 244]; *O'Callaghan* v. *Southern Pac. Co.,* 202 Cal.App.2d 364, 366 [20 Cal.Rptr. 708]; *Toenniges* v. *Griffeth,* 169 Cal.App.2d 717, 723, 725 [338 P.2d 230, 914]; *Siedletz* v. *Griffith,* 18 Cal.2d 227, 232 [114 P.2d 598]; *De Vries* v. *Brumback,* 53 Cal.2d 643, 647-648 [2 Cal.Rptr. 764, 349 P.2d 532]; *Dumas* v. *Stark,* 56 Cal.2d 673, 674 [16 Cal.Rptr. 368, 365 P.2d 424].

 So we are confronted with the task of sorting the chaff from the wheat and thus determining whether there is any merit in the appeal. We are confined to matters which appear upon the face of the judgment roll expressly or by plain implication.

 At the inception of this controversy plaintiff Daniel T. Williams and Wylie F. Mathis were realtor members but not directors of defendant Inglewood Board of Realtors, Inc., a nonprofit trade association incorporated under the General Nonprofit Corporation Law (now Corp. Code, §§ 9000-9802), and composed principally of licensed real estate brokers entitled to use the designation realtor. Its governing instrument is designated as "Constitution and By-Laws," of which article 12 prescribes the procedure for disciplining and expelling members.

Mathis filed a complaint with defendant Board of Realtors charging Williams, plaintiff herein, with unethical conduct and claiming $750 of a commission on a certain real estate transaction; plaintiff then filed a complaint against Mathis alleging unethical conduct on his part, a violation of the National Code of Ethics which was binding upon the members. Pursuant to the by-laws these complaints were referred to a committee of nine members of defendant, which committee was known as "Court of Ethics"; they heard both parties on May 6, 1958, found Mathis guilty and fined him $200; they also held that plaintiff was guilty of violation of said

---

*Now California Rules of Court, rules 4(b), 6, 7, 52.

National Code of Ethics and fined him $200; also ruled that Mathis was entitled to an award of $312 from plaintiff upon the disputed commission. Mathis appealed from the fine and the award to the board of directors as provided by the by-laws and posted his fine on May 16, 1958. The court found that it was "the custom and practice of said trade association to require the fine or award, or both if involved, in a decision of the Court of Ethics, to be posted in order to perfect an appeal to the Board of Directors; that plaintiff was aware of this custom and practice and had on a previous occasion complied therewith without objection." Plaintiff also appealed and on June 4, 1958, posted his fine and part (i.e., $168.75) of the award against him, together with his check for $143.25 representing the balance of the award; he later stopped payment on this check and same was never paid. Mathis' appeal was granted on June 2nd, plaintiff was given notice of hearing thereon and both parties were heard by the board of directors on June 18, 1958. Plaintiff's appeal was based on newly discovered evidence and he presented at said June 18 hearing all his evidence upon that subject. The board ruled that Mathis' fine be reduced to $50 and that he be awarded recovery of $750 of the real estate commission from plaintiff. Plaintiff never paid any part of this sum except the $168.75 above mentioned and he refused to pay the balance. At that same hearing plaintiff's fine was confirmed at $200.

The court found that the board of directors acted throughout the proceeding in good faith. We quote: "[I]n participating in any action by said Board of Directors in the year 1958, in any matter concerning or involving plaintiff as hereinafter found to be true, said defendant directors acted in good faith as agents of said trade association in the course and scope of their capacity of directors respectively and not otherwise. . . . [T]hat the actions taken by said board of directors on June 18, 1958 and on July 7, 1958 aforesaid were in good faith but were wrongful and void upon the grounds hereinafter found. . . . [T]hat the action of the Board of Directors on June 18, 1958, in awarding Mathis $750.00 commission from plaintiff, and in reducing Mathis' fine from $200.00 to $50.00, was by majority vote and in good faith by the members hearing the case but it was not by secret ballot filed with the clerk and its said action was therefore a material violation of the by-laws and wrongful and void."

The matter of a secret ballot arises from section 12 (a) of article 12 of the constitution and by-laws, which says: "De-

cisions of the Court shall be made by majority vote of the members hearing the case and shall be by secret ballot filed with the clerk and read upon instruction of the chairman.'' In terms this applies only to decisions of the court of ethics, but section 14 of the same article says: ''. . . The Board of Directors shall sit as a Court of Ethics in hearing the case. . . . The decision rendered by the Board of Directors is final.'' Subdivisions (c) and (e) of section 12 provide: ''(c) Decisions involving disciplining of members of the Board shall be construed as recommendations to the Board of Directors for action thereon.'' ''(e) . . . If, in the opinion of the Board of Directors at its regular meeting following the filing of an appeal or expiration of the period for appeal, the new evidence or other reasons so warrant, a new hearing shall be granted to hear the new evidence or other reasons, under the same procedure as for an original hearing.'' In this connection the court found ''that the Board of Directors interpreted Section 12 (e), Article 12, to mean, and by custom and practice it was taken to mean, that the new hearing when granted would be heard before the Board of Directors and not returned to the Court of Ethics, whether it involved a fine or award or both, and the hearing was held before the Board of Directors in accordance with said interpretation, custom and practice; and that said appeal involved both a fine and an award as aforesaid.''

That the language of this section is ambiguous seems to be conceded by respondent's brief, where it is said: ''It is not even clear whether Section 15 of Article 12 refers to the vote *at* a new trial, and/or the vote granting an appeal for a new trial, and/or the vote rejecti*on* a purely disciplinary decision of the Court of Ethics.''

Whether the statement of section 14 that the board of directors ''shall sit as a Court of Ethics in hearing the case'' means that it shall adhere to all the procedural rules prescribed for the court of ethics on the one hand, or merely means that the board of directors shall hold a trial de novo and adjudge the merits regardless of any procedural errors made by the court of ethics, poses a question of interpretation of the by-laws. The latter seems more probable because more reasonable. The court found, however, ''that said Section 12 (a), Article 12, applied to hearings before the Court of Ethics and to hearings on appeal before the Board of Directors; that the action of the Board of Directors on June 18, 1958, in awarding Mathis $750.00 commission from plaintiff, and in

reducing Mathis' fine from $200.00 to $50.00, was by majority vote and in good faith by the members hearing the case but it was not by secret ballot filed with the clerk and its said action was therefore a material violation of the by-laws and wrongful and void." The soundness of this ruling must be tested by the applicable authorities.

■ *DeMille* v. *American Fed. of Radio Artists,* 31 Cal. 2d 139, 147 [187 P.2d 769, 175 A.L.R. 382]: "The practical and reasonable construction of the constitution and by-laws of a voluntary organization by its governing board is binding on the membership and will be recognized by the courts. (*Simpson* v. *Grand International Brotherhood,* 83 W. Va. 355 [98 S.E. 580, 587]; *State* ex rel. *Smith* v. *Kanawha County Court,* 78 W. Va. 168 [88 S.E. 662, 664, 20 A.L.R. 1030]; *Harris* v. *Missouri Pac. R. Co.,* 1 F.Supp. 946, 949; *Shaup* v. *Grand International Brotherhood,* 223 Ala. 202 [135 So. 327, 328]; *Norfolk & W. Ry. Co.* v. *Harris,* 260 Ky. 132, 137 [84 S.W.2d 69].)"

*Norfolk & W. Ry. Co.* v. *Harris,* 260 Ky. 132 [84 S.W.2d 69, 72]: "The courts are agreed that it is not within their province to inquire into and determine the expediency, practicability, or wisdom of the constitution and by-laws of such organization as the Brotherhood of Maintenance of Way Workers; nor interpret and construe them or to assume and exercise jurisdiction appertaining thereto so long as their interpretation and construction by the brotherhood are not fraudulent, arbitrary, or capricious, or do not trespass upon, or destroy the property or contractual rights of its members, or transgress the bounds of reason or contravene public policy or the laws of the land."

*Cason* v. *Glass Bottle Blowers Assn.,* 37 Cal.2d 134, 143 [231 P.2d 6, 21 A.L.R.2d 1387]: "It is, of course, true that the refined and technical practices which have developed in the courts cannot be imposed upon the deliberations of workingmen, and the form of procedure is ordinarily immaterial if the accused is accorded a fair trial. (See *McConville* v. *Milk W. D. Union,* 106 Cal.App. 696, 701 [289 P. 852]; 30 Columb. L. Rev. 847, 852; 4 Am.Jur. 471-472; 7 C.J.S. 61.) The union's procedure, however, must be such as will afford the accused member substantial justice, and the requirements of a fair trial will be imposed even though the rules of the union fail to provide therefor."

Volume 6 American Jurisprudence 2d section 36, page 465: "[S]uch proceedings are usually informal; they are not re-

quired to conform to the procedure in courts of law, so long as the accused is given a fair trial and an opportunity to present his evidence.'' Section 37, page 466: ''In such cases the courts never interfere except to ascertain whether or not the proceeding was pursuant to the rules and laws of the organization, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the law of the land. If it is found that the proceeding was had fairly, in good faith, and pursuant to the laws of the organization, and that there was nothing in it in violation of the law of the land, the decision is conclusive.''

*Developments in the Law. Judicial Control of Actions of Private Associations,* 76 Harvard Law Review 983: ''If a court undertakes to examine the group's rules or past usages, its inquiry may lead it into what Professor Chafee has called the 'dismal swamp,' the area of its activity concerning which only the group can speak with competence. Rules and usages which have taken on a peculiar meaning over a period of time, when interpreted by a court which is unfamiliar with the group or unsympathetic to its practices, may be construed in a way which does not reflect the understanding of the members prior to the dispute.'' (P. 991.) ''While the foregoing considerations appear to support a practice of normally enforcing a group's rules, if the economic consequences of allegedly wrongful group conduct are slight and there is a compelling interest in conceding the group autonomy, a deviation from the rules may not in itself be sufficient cause for judicial intervention. Conversely, adherence to the rules will not always justify a group's action.'' (P. 996.) ''When the rules are ambiguous or do not cover the point in dispute, and there is available no authoritative interpretation by an organ of the group, a reasonable provision will be supplied just as in the construction of any other contract.'' (P. 1001.)

The foregoing authorities relate specifically to unincorporated voluntary associations, but the same rules of interpretation apply to nonprofit corporations and to corporations generally. (See 1 Ballantine & Sterling, California Corporation Laws, § 18, pp. 34-35.) The portion of the Corporations Code which governs nonprofit corporations such as the one at bar, provides in section 9402 that the by-laws of a nonprofit corporation may make provisions for: ''(a) The admission, election, appointment, withdrawal, suspension, and expulsion of members. . . . (c) The transfer, forfeiture, and termination of membership, and whether the property interest of mem-

bers shall cease at their death or the termination of membership, and the mode of ascertaining the property interest, if any, at death or the termination of membership.'' Volume 2 Ballantine & Sterling, California Corporation Laws, section 422, subparagraph 6, page 771: ''Membership corporations may exert large disciplinary powers over the personal conduct and character of the members, in view of the personal relationships involved and may provide for the forfeiture of valuable memberships for misconduct, with or without provision for payment of the values of the membership.''

Concerning the interpretation of by-laws generally, 18 Corpus Juris Secundum section 183, page 595, says: ''The board of directors of a corporation may interpret an ambiguous by-law without formality, the interpretation arising from their conduct and methods of transacting business, and the general rule as to recognizing a practical construction by the parties applies, so that, in the case of ambiguity in a by-law, a court will not give it a positive construction opposed to any consistent practical construction which it has received from the corporation and its members, where such practical construction is not unreasonable, or contrary to the principles of justice or morality or to any rule of law or public policy.

The courts, however, are not bound by the construction adopted by the corporation, its officers, or its members.

''In general the by-laws of associations organized for social, charitable, moral, or religious purposes will not be scrutinized closely by the courts, nor will they be interfered with unless there has been an abuse of discretion and a clear, unreasonable and arbitrary invasion of private rights.''

We hold that the interpretation placed upon the secret ballot provision of the by-laws was a reasonable one and that the court erred in condemning action taken pursuant to said interpretation.

This matter went originally to the court of ethics and then to the board of directors on appeal because it involved an alleged breach of the National Code of Ethics and was also subject to arbitration of money or other property claims, this pursuant to section 3 of article 12 of the by-laws. Section 18 (a) of that article provides: ''Any cause of action which qualifies to be brought before the Court of Ethics shall be submitted to the Court of Ethics and not to a court of law unless the Board of Directors refuses to refer a complaint to hearing by the Court of Ethics,'' and unless previously decided by a court. Williams and Mathis signed in advance of

the hearing, as provided by section 2 (e) of article 12, an agreement to abide by the decision of the court of ethics. The court below found "that Mathis' complaint against plaintiff was subject to arbitration, insofar as it sought an award against plaintiff; that both parties signed the agreement required by said Section 2 (e), Mathis in his complaint and plaintiff in his reply thereto; and that it was not required or necessary for them to sign an additional statement on the appeal to the Board of Directors to abide by its decision and that the original agreement in the complaint and reply sufficed before the Board of Directors." The joint pretrial statement which was incorporated in the pretrial order,[1] says: "That in his written reply to the complaint against him in the matter of *Mathis* vs. *Williams,* the plaintiff, who was the respondent in said matter, signed the following statement: 'This reply is true and correct to the best knowledge and belief of the undersigned. Respondent agrees to abide by any Decision involving the award of money or other property. Respondent waives any right of personal redress against said Board or any member or employee thereof for any action taken in pursuance of official duties under the Constitution and By-laws of said Board.' "

Bearing in mind the fact that the omission by the Board of Directors to take a secret ballot upon the appeal hearing was done in good faith, as found by the court, this agreement to abide by the result is significant. In fact, it is binding. (*Robinson* v. *Templar Lodge, I.O.O.F.,* 117 Cal. 370, 374 [49 P. 170, 59 Am. St. Rep. 193]; *Pool* v. *Brotherhood of Railroad Trainmen,* 143 Cal. 650, 652-653 [77 P. 661].) *Otto* v. *Journeymen Tailors' P. & B. Union,* 75 Cal. 308, at p. 314 [17 P. 217, 7 Am.St.Rep. 156], says: "In the matter of expulsion, the society acts in a *quasi* judicial character, and so far as it confines itself to the exercise of the powers vested in it, and in good faith pursues the methods prescribed by its laws, such laws not being in violation of the laws of the land or any inalienable right of the member, its sentence is conclusive, like that of a judicial tribunal. . . . It has been held, in reference to the expulsion of members from societies of this character, that the courts have no right to interfere with the decisions of the societies except in the following cases: '1. If the decision arrived at was contrary to natural justice, such as the

---

[1] The pretrial order necessarily becomes a part of the judgment roll because of its prescribed effect upon the pleadings and the issues in the cause.

member complained of, not having an opportunity to explain misconduct; 2. If the rules of the club have not been observed; 3. If the action of the club was malicious, and not *bona fide.*' " The trial court found that though the action of the Board of Directors was taken in good faith by a majority vote, "it was not by secret ballot filed with the clerk and its said action was therefore a material violation of the by-laws and wrongful and void."

Note 168 American Law Reports 1462: "Exhaustion of remedies within labor union as condition of resort to civil courts by expelled or suspended member." At page 1463: "By uniting with the union the member assents to and accepts the constitution and impliedly binds himself to abide by the decision of such board as that instrument provides for the determination of the disputes arising within the association. The decisions of such tribunals, when organized under the constitution and lawfully exercising their powers, are of a quasi-judicial character, and are no more subject to collateral attack for mere error than are the judgments of a court of law. The courts will look into the record to ascertain whether the disciplinary proceedings were pursuant to the constitution and bylaws of the association, and whether the proceedings were in good faith, whether the charges were substantial, and whether the member has had fair notice and opportunity to be heard; but will not substitute their judgment for that of the organization."

We hold that the secret ballot was omitted by the directors pursuant to a bona fide interpretation of the by-laws; that said omission was not a violation of the by-laws and that it was valid.

Referring now to the question of prejudice from failure of the directors to take a secret ballot upon the hearing of the appeal (assuming an obligation so to do), respondent argues that the requirement was made for the benefit of the appealing member in order to protect him against unsound decisions rendered through fear of criticism. Appellant argues that the secret ballot was provided for the protection of the board members who hear the matter so as to relieve them from any embarrassment through voice voting. We are inclined to appellant's view on this and are not impressed with the judge's view that this was "a material violation of the by-laws and wrongful and void." Section 12 (a) itself provides that the secret ballot be filed with the clerk "and read upon instruction of the chairman," thus dispensing with

any actual secrecy. Also, section 15 of article 12 says: "(a) Whenever a director votes against sustaining an opinion of the Court of Ethics, he shall submit in writing a statement of his reasons, and a copy thereof shall be submitted by the Secretary to each member of the Court of Ethics. (b) If the Board of Directors rejects an opinion of the Court of Ethics, then a written report stating the reasons therefor shall be submitted to each member of the Court." And section 24: "The president may make public any decision of the Court of Ethics or of the Board of Directors resulting from a disciplinary proceeding with the approval of the Board of Directors." It plainly appears that the secrecy aspect of the voting is but an illusory thing. How this departure from the by-laws (if it be one) could have worked prejudice to plaintiff is not apparent; the trial judge does not tell us. Plaintiff himself gave publicity to the expulsion in a letter addressed to the public in or about the month of September 1958.

Finally, it should be pointed out that plaintiff has not here contended seriously that he was not guilty of the charges which were upheld by the board of directors, and the trial judge made "no finding as to who was telling the truth at these hearings or on the merits of the controversy or the sufficiency of the evidence to justify either decision or as to what award Mathis was entitled." Respondent relies entirely upon alleged procedural deficiencies in the explusion hearing and does not claim his trial was essentially unfair or that he was not permitted to introduce all his evidence.

The case of *Gonzales* v. *International Assn. of Machinists*, 142 Cal.App.2d 207 [298 P.2d 92], cited by respondent, is not controlling in the instant case. The court said, at page 215: "We hold that attempting to rescind an action required to be taken by a secret vote, by a standing vote, is a violation of the constitution and of the rules and was therefore void." It gives no further explanation and then refers to the Lodge's constitution and Roberts Rules of Order. The factual situation at bar is so different from Gonzales that we do not feel disposed to accept the quoted ruling as applicable here.

The trial judge drew the conclusion that plaintiff's expulsion was "wrongful and in violation of the contract between plaintiff and defendant . . . in at least the following respects," (a) the failure of the board of directors to take a secret ballot on June 18, 1958, and (b) "the action of said Board of Directors on July 7, 1958 aforesaid was wrongful and void

because based upon its said action taken on June 18, 1958. . . ."

We hold that the ground first specified is not supported by the record. Also, that there is no merit in the conclusion that the action taken on July 7, 1958, was void because based upon void action of June 18, 1958. The conclusions we have above stated concerning the validity of the action of June 18 necessarily defeat this holding of the trial judge; if, as we have found, the action of June 18 was valid, then that of July 7 did not rest upon an unstable foundation.

██ However, the trial judge added to the language above quoted from the ''conclusions'' this further statement, ''and because plaintiff was not given a further hearing or citation before expulsion, in violation of Section 3, Article 5 of said Constitution and By-laws, constituting a denial of due process.''

The pertinent facts as found are these: ''On July 7, 1958, the Board of Directors of said trade association, by majority vote of those directors present and voting, in good faith, resolved that plaintiff be expelled from said trade association within five (5) days from July 7, 1958, if he did not conform to the decision of said Board of Directors made on June 18, 1958, in the matter of an award made against him in a controversy between plaintiff and defendant MATHIS; and that plaintiff refused to conform to said decision. The Court finds that upon plaintiff's refusal to conform to said decision it was considered by said trade association that plaintiff stood expelled as a result of its said action taken on July 7, 1958 aforesaid''; ''that no further hearings were held following the hearing of June 18, 1958; that plaintiff was not cited to appear prior to the action taken by the Board of Directors on July 7, 1958, found in Finding IX above''; ''that prior to expulsion plaintiff was entitled to another hearing under Section 3, Article 5, and the failure to hold such hearing or cite plaintiff to appear constituted a violation of said Section and a material breach of said contract and a denial of due process and rendered said action of July 7, 1958 void.''

The board's expulsion of appellant was the exercise of a power vested in it by section 1 of article 12: ''*Authority.* The Board of Directors is authorized, as herein provided, to censure either privately or publicly, impose a fine, suspend from membership for a period of not more than one year, or expel from membership, any member for any of the following reasons: . . . (b) Breach of or failure to abide by the Code of Ethics of the National Association of Real Estate

Boards. (c) Breach of or failure to abide by the Constitution and By-Laws or Rules and Regulations of the Board. . . . (e) Refusal to abide by or to comply with, the terms on an award in any arbitration proceeding under the terms of this Article, after having agreed in writing to do so and after having received notice of the award." The power thus exercised did not flow from section 3 of article 5.

That section prescribes a method of disciplining a member which is parallel to that of article 12 but not a part of it. Its provision for notice is found in the first sentence: "For failure to abide by the By-Laws of the Board, or if it appears from a written communication from any member or other person or persons that the conduct of a member has been prejudicial to the Board or the Real Estate profession, the Board of Directors, after citing said member, with seven (7) days notice of hearing, shall have full power to suspend for a period of not more than one year, or expel said member, and he shall be and is expelled after being so declared." This plainly does not relate to an appeal taken under article 12. So far as the right to seven days notice is concerned, it is quite illogical to say that after the board of directors has rendered a final decision on appeal the appellant is entitled to a new hearing and a new notice. Especially is this so when considered in the light of these findings: "That on July 7, 1958, at the first regular meeting of the Board of Directors following the posting of plaintiff's fine and part of the award, plaintiff's appeal from his fine and the award was denied as aforesaid; and the Court finds that this action was tantamount to a ratification of the decision of the Court of Ethics in the matter of said fine, and that on August 11, 1958, at a special meeting of the Board of Directors, it was specifically resolved that plaintiff's fine be upheld"; "it is true that Section 14, Article 12 (as construed by the Court), provided in part that if a disciplinary decision of the Court of Ethics is rejected by the Board of Directors, then a new trial is automatically granted, to be heard by the Board of Directors; that the granting of Mathis' appeal from his fine was a rejection of the decision of the Court of Ethics and a new hearing was held as aforesaid; that plaintiff was present at the new hearing and was heard as aforesaid, and had the opportunity to contest the reduction of Mathis' fine. The Court finds that there was a substantial compliance with said provisions of said Section 14, Article 12."

Plaintiff was fully aware of the charges and the rulings of

the court of ethics and of the board of directors on appeal; he refused to comply with same; he did not seek any further hearing. On July 7 there was no longer any dispute as to the facts and no reason for a new hearing which no one desired and which would develop no new facts. Nothing essential to a fair hearing and a fair decision was denied plaintiff. A final ruling of the board of directors had been made; he was advised of it, refused to perform, and thus laid indisputable basis for expulsion without more ado.

Where the facts are undisputed a member of an association may be expelled for infraction of its governing laws without the necessity of a hearing. *Cason* v. *Glass Bottle Blowers Assn., supra,* 37 Cal.2d 134, 145 [231 P.2d 6, 21 A.L.R.2d 1387]: "Under certain circumstances, where the facts are not disputed, a labor union may discipline a member without affording him a trial. For example, in *DeMille* v. *American Fed. of Radio Artists,* 31 Cal.2d 139, 154-155 [187 P.2d 769, 175 A.L.R. 382], it was held that the enforcement of a by-law providing for automatic suspension of a member upon failure to pay an assessment did not contravene the requirements of due process. (See, also, *Brown* v. *Lehman,* 141 Pa. Super. 467 [15 A.2d 513, 156-517].)"

The award of damages for plaintiff's expulsion from defendant Board of Realtors worked a miscarriage of justice.

Judgment reversed, and order denying defendant's motion to vacate said judgment and to enter a different judgment reversed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied September 19, 1963, and respondent's petition for a hearing by the Supreme Court was denied October 16, 1963.