83 Cal.App.3d 296 (1978)
147 Cal. Rptr. 861
Estate of IRVIN H. LYNCH, Deceased.
BRUCE A. ALTMAN, as Public Administrator, etc., Petitioner and Appellant,
v.
GORDON L. COX et al., Objectors and Respondents.
Docket No. 52497.
Court of Appeals of California, Second District, Division Five.
July 27, 1978.
*298 COUNSEL
John H. Larson, County Counsel, and Gordon W. Treharne, Deputy County Counsel, for Petitioner and Appellant.
Keatinge, Pastor & Mintz, Marshall G. Mintz and Marilyn S. Heise for Objectors and Respondents.
OPINION
STEPHENS, J.
(1) (See fn. 1.) This appeal is by the Los Angeles County Public Administrator (Public Administrator) from a ruling approving assignments of portions of interests in the estate possessed by various heirs.[1]
*299 The facts are that the estate came into existence on September 27, 1973, upon the death of testator. The Public Administrator was duly appointed and qualified as administrator on November 23, 1973. During the period of November 28, 1973, to December 13, 1973, all of the apparent heirs made assignments of one-third of each of their respective shares; most of the assignments were to Gordon L. Cox, and his firm, W.C. Cox and Company. Cox is engaged in the business of locating heirs and, when an heir is located, he seeks to obtain an assignment of a portion of the estate as his remuneration for the "finding."[2]
In the instant case W.C. Cox and Company informed the heirs that it had retained an attorney to protect its assigned interest in the estate. According to Cox, the attorney was retained, in part, to "establish to the Court's satisfaction the identity and relationship of the heirs to the decedent; since our assignment is contingent upon the heirs receiving funds from the estate in question" Cox and Company further informed the heirs that the attorney would be willing "to represent and protect the heirs' interest in the estate and make no charge for such services rendered in the heirs' behalf, provided such heirs request him to act in their behalf." The heirs were not required to use Cox's attorney and no express power of attorney was included in the assignment. The 14 heirs making assignments to Gordon L. Cox all signed retainer agreements with an attorney, Ivan McWhinney.
None of the heirs took any steps on their own behalf to challenge the assignments.
The probate court, in accordance with Superior Court for the County of Los Angeles Probate Policy Memorandum, section 13.11, ordered the heirs to file copies of the assignments as well as affidavits concerning the circumstances surrounding the assignments. These were filed on March 5, 1976. All of the assignments to Gordon L. Cox were identical.
On April 7, 1976, the Public Administrator moved, pursuant to section 1020.1, for inquiry into the circumstances surrounding the assignments. At the hearing to inquire into the assignments, he took the position that the burden of producing evidence and the burden of proof were on the assignee because of the special nature of the proceedings under Probate Code, section 1020.1. The Public Administrator contended that his role *300 was to initiate the inquiry proceedings, and that it was the role of the court to make the inquiry. That court stated that it would not interrogate witnesses and would not become an advocate.
The evidence produced by the Public Administrator consisted of the assignments made to respondents, the contents of the letter retaining the attorney for the heirs and the testimony of one witness, Ivan McWhinney, attorney for the heirs and for W.C. Cox and Company (the latter client was not represented by Mr. McWhinney at the § 1020.1 hearing nor on this appeal). No evidence was produced by the Public Administrator of the actual conversations and transactions between the assignee and the assignors. Respondents presented no evidence of their own. At the close of the Public Administrator's case, respondents moved, under section 631.8, Code of Civil Procedure, for a judgment on the grounds that the Public Administrator had failed to prove a case.
The court in upholding the assignments to Gordon L. Cox ruled: "[t]hat the burden of proof and the burden of production of evidence in this hearing brought under Probate Code § 1021.1 are upon the party seeking to challenge the assignments, in this case, the Public Administrator of the County of Los Angeles." The court further ruled that the assignments to Gordon L. Cox, being in writing, are presumed to be supported by consideration. The court concluded that the Public Administrator had failed to sustain his burden of proof and burden of production of evidence for either of the issues of whether the consideration for the assignments was grossly unreasonable or whether the assignments "were procured by duress, fraud and/or undue influence."
(2a) The Public Administrator argues on appeal that the assignee of a partial assignment, in a section 1020.1 inquiry, has the burden of producing evidence of the consideration and the circumstances surrounding the execution of the assignment. He argues that the Public Administrator's responsibility ends when a motion to inquire is made. The Public Administrator raises a second issue of whether all the assignments are void as being contrary to public policy.
The language of Probate Code section 1020.1[3] gives broad discretion to the probate court. The section allows the probate judge to inquire into the *301 circumstances surrounding an assignment of interest, but it does not require such an inquiry. It does not require that a court hold a full inquiry into every assignment that comes before it, or even into any assignment that comes before it. The judge has discretion to decide how extensive an inquiry, if any, will be made into an assignment pursuant to section 1020.1.
The language of the statute is permissive in nature. In Estate of Kerr (1966) 63 Cal.2d 875 [48 Cal. Rptr. 707, 409 P.2d 931], the Supreme Court stated that at least where the heir did not, as such, move the court for such an inquiry and where other evidence tended to show reasonableness of the assignment, "... the inquiry contemplated by that section [1020.1] appears to be permissive rather than mandatory." (Id., at p. 880.) Under the reasoning of Kerr, the section does not appear to require the court to make a full inquiry every time a motion to inquire has been made.
Probate Code section 1020.1 allows any party interested in the estate, the Public Administrator, or the court itself, to make a motion to inquire into the consideration for an assignment and into the circumstances surrounding the execution of the assignment. Should such an inquiry be made, it is up to the court as to how it will be conducted. The court may require from the moving party some tangible evidence of irregularity or illegality before the court would be willing to proceed with a full inquiry. Alternately, the court may regard the assignment as questionable to begin with and may therefore place the initial burden of production on the heir hunter. The language of section 1020.1 does not bind a court to any specific rule as to who has the burden of production.
A requirement that a probate court must always conduct a full inquiry into the circumstances surrounding a partial assignment of an interest in an estate whenever a public administrator makes a section 1020.1 motion would place a great burden on the probate courts, a burden which is not imposed by Probate Code section 1020.1.
*302 In the present case, the probate court was within its authority to presume the validity of the assignments in the absence of any evidence to the contrary. The court took a passive role in the inquiry, declining to take the lead; this approach was a proper one. In a section 1020.1 hearing, there is, of necessity, an initial burden on the moving party to create a validity question in the mind of the court so that a full inquiry is desired into the assignments involved. If the court is already of that belief, then the moving party has an easier job. Here, the Public Administrator failed to create that question in the mind of the court. The evidence produced consisted of the assignments and affidavits of the heirs stating that they were satisfied with the assignments. These, the probate court correctly found, showed no irregularity in and of themselves. Only one witness, the attorney, McWhinney, was produced by the appellant. As the court below stated, the only facts proved by that testimony were that the attorney's fees were to be paid by Gordon L. Cox and W.C. Cox and Company and that the attorney received a letter from each of the heirs who made assignments to Cox authorizing him to represent them at no charge to the heirs. In the absence of any evidence to the contrary, the court held that the assignments to Cox did not contain a power of attorney and did not violate Estate of Butler, supra, 29 Cal.2d 644.[4] The court also stated that there was no evidence going to the issue of validity of consideration for the assignments. The court invoked a presumption under the law that a contract in writing has consideration. The court upheld the validity of the assignments on the basis of the lack of any evidence which rebutted that presumption.
The court was not unreasonable in drawing the conclusion that the assignments are valid. Civil Code, section 1614 states: "A written instrument is presumptive evidence of a consideration." In the present case, where the assignments do not display a Butler power of attorney and where insufficient extrinsic evidence is presented by the Public Administrator to show such a power of attorney, the court is within its authority to decline to inquire further into the arrangements or the circumstances surrounding the assignments. Where no evidence as to the consideration for the assignments is presented at all, and when none of the parties to the assignments, i.e., the heirs, are challenging those instruments or their reasonableness, it is within the court's discretion to rely upon the presumption that there was consideration. Under these circumstances, the court is not obligated under section 1020.1 of the Probate Code to make further inquiry.
*303 The Public Administrator argues in his brief: "When the court sets down a hearing, it is not necessary that the court produce evidence concerning the circumstances of the assignment. It is submitted that the Public Administrator has no greater burden when it is he who initiates the inquiry." The Public Administrator's error is that it is the court who must be convinced that there may be a problem before a full inquiry will be held. If the court is making the motion to inquire, it is presumably because that court foresees some irregularity or suspicious circumstances. If the Public Administrator is the moving party, then the court may or may not be convinced that there may be something amiss. If the court is not so convinced, then he may require the Public Administrator to show some evidence of such a possibility.
The Public Administrator argues that the same rule of procedure as applies to a petition for extraordinary commission or attorneys' fees should apply to a section 1020.1 proceeding. In those cases the representative and his attorney have the burden of showing what services they have performed. (Estate of Fulcher (1965) 234 Cal. App.2d 710, 718 [44 Cal. Rptr. 861].) This burden would be misplaced in the case of an heir hunter within the present concept of section 1020.1, at least in the situation where none of the heirs are objecting to the agreement and where there is no evidence of suspicious circumstances to suggest a grossly unreasonable or otherwise invalid assignment. In the case of extraordinary fees or commissions, it is the representative, or his attorney, who is seeking compensation beyond the scope of an existing agreement or arrangement. In the present case, neither the heir nor the heir hunter seek anything beyond what is stated in the contract of assignment. The person seeking to invalidate the contract is the Public Administrator; consequently, he has the responsibility to provide some evidence to justify his challenge to the assignments.
The Public Administrator cites Estate of Reilly (1947) 81 Cal. App.2d 564 [184 P.2d 922], for the proposition that the assignee must submit evidence of the value of any services rendered to the heirs. The Reilly case differs from the present case in that the Reilly assignments were found to be void under Estate of Butler, supra, 29 Cal.2d 644. It was only after the assignee argued on appeal that he should be compensated for services actually rendered that the appellate court said there was no evidence in the record of any services rendered by the assignee and the failure of the assignee to divulge any such beneficial services to the probate court leads to "[t]he only inference that can be deduced from the *304 record ... that he did not [render any beneficial service to appellant heir]." (81 Cal. App.2d at p. 569.)
The Public Administrator next relies on Burchell v. Strube (1955) 43 Cal.2d 828 [279 P.2d 1], to show that respondent here has the burden of showing the value of the services rendered. In Burchell the court, quoting from Estate of Larson (1949) 92 Cal. App.2d 267, 273 [206 P.2d 852], said: "`Where the consideration is "grossly unreasonable," the burden is upon the heir hunter [or other assignee] to prove their real value.'" (Id., at p. 836.) The problem with this argument is that a showing of "grossly unreasonable" consideration is apparently a precondition to shifting the burden of proof to the assignee. As already discussed, the Public Administrator offered no evidence going to the issue of reasonableness of consideration.
The Public Administrator argues that Estate of O'Donnell (1948) 85 Cal. App.2d 1 [192 P.2d 94], stands for the proposition that the court must actively inquire into the assignment to the heir hunter and that the assignment must have a "clear showing of justification" before payment may be made to the heir hunter. The factual difference between O'Donnell and the present case is that O'Donnell is concerned with an incompetent whose half sister and guardian assigned a partial interest in his share of the estate to the heir hunter. The court said there was a duty on the courts, guardian, and attorneys to preserve the estate of the incompetent since the incompetent, obviously, cannot do so. The present case involves 14 heirs, none of whom are incompetent and none of whom challenge the assignments. The added responsibility of a court to protect the interest of an incompetent heir just does not exist.
The Public Administrator contends that the assignments violate public policy because of the method by which the assignee obtains legal representation for the heirs. He argues that the practice of the assignee retaining its own counsel who represents the heirs at no extra cost to the heirs is a deceptive practice in violation of the Estate of Butler prohibition against unlawful practice of the law. The Public Administrator's allegations may or may not be true. In the present case, however, he produced insufficient evidence to show such alleged illegal arrangements. The only conclusion that may be drawn from the record in this appeal is that the practice utilized here is legal.
(3) The standard of review on appeal of a section 1020.1 motion is the same as the general rules for appellate review. The appellate court will *305 view the evidence in the light most favorable to respondent; will not reweigh the evidence; will indulge in all intendments which favor sustaining the finding of the trier of fact, if there is substantial evidence in the record in support thereof. (Estate of Simmons (1963) 217 Cal. App.2d 580, 585 [31 Cal. Rptr. 861].) The evidence presented to the probate court in the present case, when viewed in the light most favorable to the respondents, was clearly insufficient to prove that the assignments violated public policy.
(2b) In summary, where, pursuant to a motion by the Public Administrator under Probate Code section 1020.1, the court gives the Public Administrator an opportunity to show some irregularity in an assignment or in the circumstances surrounding such assignment, and where the Public Administrator fails to do so, and if where the assignment is not invalid on its face and none of the parties to the assignment are challenging such assignment, the probate court may presume that such written assignment is valid without conducting a detailed inquiry.
The judgment is affirmed; the motion to dismiss the appeal denied.
Ashby, J., concurred.
KAUS, P.J.
I respectfully dissent.
I do not disagree with the majority's holding that the public administrator cannot just file a "motion to inquire" under section 1020.1 of the Probate Code and thereby place both the burden of going forward and the burden of persuasion on the assignee's shoulders. If the Legislature had wanted every assignee to have to prove that the consideration for the assignment is not "grossly unreasonable" it could have said so in simple language. At the same time I disagree that the mere fact that the assignments are in writing imports more than there is consideration adequate to support a simple contract  which is not the issue in a section 1020.1 inquiry. Finally I have some problems in understanding just what, under the majority opinion, it would take to impose some kind of burden on the assignee.
These problems are not, however, my primary concern. Contrary to the assertion in the majority opinion, it appears to me that the assignee engaged in highly questionable practices with respect to legal representation for the heirs. The file contains one express letter to an heir which I *306 copy in the appendix. I gather that it is typical of what the assignee advises heirs concerning legal representation. It is clearly misleading, in that it implies a mutality of interest between assignee and heir which does not, in fact, exist. First I very much doubt whether the attorney picked by the assignee considered it part of his duty to the heir to explain that he could attack the assignment under section 1020.1. Second, even if the assignor's and the assignee's interests coincide as to the total amount which the heir is to receive from the estate, the heir may have problems of timing, taxes, nature of interest and so forth about which the assignee could not care less and which, to avoid delay, he does not want raised. Finally there may be conflicts as to specific properties between two or more of the heirs whom the assignee has signed up for one third each. The assignee does not care whether he gets $33,333.33 from one heir who inherits $100,000 or $11,111.11 from three heirs who each get a third of $100,000.
I am not sure just what remedy the probate court should have undertaken. Perhaps voiding the assignments would have been too drastic. I am, however, certain, that contrary to the majority opinion, the record contains ample evidence of deceptive, improper practices with regard to the assignee's legal representation.

APPENDIX
 File No. 8732 November 28, 1973
 Mr. Samuel C. Lynch
 9207 Hidden Valley Court
 Mentor, Ohio 44060
 Re: Estate of Irvin Harold Lynch
 Dear Mr. Lynch:
Thank you for the courtesies extended our Mr. Donald Hanses when he spoke with you on the telephone.
In explanation of our interest in this matter we wish to state that we make a business of locating missing or unknown heirs to known estates. To give you some idea as to how we operate we will outline our usual procedure in processing cases such as this.
1. When we locate the heirs we obtain from them a partial assignment of interest in order to compensate us for the time, money, and effort we have already expended in locating the heirs and advising them of their possible interest in an estate.
*307 2. Upon receiving the executed assignment contracts from the heirs we retain and pay the fees of an attorney at the situs to protect our assigned interest.
3. In order for us to have an interest to be protected the attorney must establish to the Court's satisfaction the identity and relationship of the heirs to the decedent, since our assignment is contingent upon the heirs receiving funds from the estate in question.
4. Since there is no additional work necessary on the part of the attorney he is also willing to represent and protect the heirs' interest in the estate and make no charge for such services rendered in the heirs' behalf, provided such heirs request him to act in their behalf.
5. The heirs are perfectly free to retain any counsel of their own choice at the situs to protect their interest in the estate. However, since we have already committed ourselves to pay an attorney a fee for protecting our interest the heirs cannot expect us to pay such attorney's fees.
6. When distribution occurs the heirs' checks are forwarded to their bank and instructions are given to pay the heirs their net distributive share and return to our bank our assigned interest, i.e., if the heirs received $900.00 their bank would pay them $600.00 and return to us our one-third fee or the sum of $300.00. We would then pay our attorney at the situs his fees.
7. In the event no money is distributed to the heirs the time, money, and effort invested by this company would be a loss borne solely by us and the heirs would not be out of pocket one cent. Our 1/3 assigned interest is computed on the actual money received by the heirs. Federal and State Inheritance Taxes, Administrator's fees, etc. are all deducted and held by the Court and our fees apply only to the net amount of money actually distributed to the heirs.
We enclose herewith our standard Agreement and Assignment form granting us a 1/3 interest in the net amount of money actually distributed to you from this estate.
We have received an identical Agreement and Assignment form executed by your cousin. Mrs. Carmen Norris, and are negotiating with your cousin, Russell Conroy.
As Mr. Hanses pointed out to you on the telephone, we have locked horns with our competition in connection with this estate, and while we will represent part of the heirs the competition will represent another portion.
About the only thing that would be germane in our argument is that we have been in this business for over 60 years and consider ourselves to be the Cadillac of the industry.
We trust we will be hearing from you soon with regard to utilizing the services offered by our firm, and that the executed Agreement and Assignment contract will accompany your response. This form should be signed in the presence of one witness.
 Sincerely yours,
 W.C. COX AND COMPANY
 RES:reb By: Richard E. Shade
 Enc.
NOTES
[1] Also pending is a motion to dismiss the appeal on the ground that the Public Administrator does not have standing to appeal as he is not an aggrieved party. That motion is denied. He is a proper party for it is within his power to raise the section 1020.1 Probate Code motion initially.
[2] At least one other heir made assignments to Ferris & Co., another heir-hunting firm. The court found these assignments to be coupled with a power of attorney, and, therefore, void under Estate of Butler (1947) 29 Cal.2d 644 [177 P.2d 16, 171 A.L.R. 343].
[3] Section 1020.1 of the Probate Code reads as follows: "The court before making distribution of any property of a decedent to any assignee or transferee of any heir, devisee or legatee or before making distribution to any person other than an heir, devisee, or legatee pursuant to any agreement, request or instructions of any heir, devisee or legatee or of any attorney-in-fact of any heir, devisee or legatee may on the motion of any person interested in the estate or on the motion of the public administrator or on its own motion inquire into the consideration for such assignment, transfer, agreement, request or instructions and into the amount of any fees, charges, or consideration paid or agreed to be paid by the heir, devisee or legatee and into the circumstances surrounding the execution of such assignment, transfer, agreement, request or instructions and if it finds that the fees, charges or consideration paid by any such heir, devisee or legatee is grossly unreasonable or that any such assignment, transfer, agreement, request or instructions was obtained by duress, fraud or undue influence it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable. Notice of a hearing on any motion made pursuant to this section shall be served personally or by registered mail as the court may direct at least 10 days before the hearing upon the heir, devisee, or legatee executing any such assignment, transfer, agreement, request, or instructions and upon the person or persons claiming thereunder."
[4] In Butler it was held that an "heir hunter" [nonlawyers] could not enforce agreements for compensation and accompanying powers of attorney under which he undertook to furnish legal services free, as unlawful practice of the law.