[Civ. No. 23398. Third Dist. Oct. 2, 1985.]

LINDA ALLEN, Plaintiff and Respondent, v.
GENE TOTEN et al., Defendants and Appellants.

## Counsel

Halkides & Morgan, G. Dennis Halkides and Harry C. Carpelan for Defendants and Appellants.

Robert A. Rehberg for Plaintiff and Respondent.

## Opinion

**SPARKS, J.**—In this case we consider whether there is a cause of action in California for negligent infliction of emotional distress against a county and its peace officers for bringing a wife to the scene of a standoff between the police and her armed and suicidal husband with the hope that she might persuade him to surrender. We decline to recognize such a cause of action even though the police, acting lawfully and without negligence, thereafter wound the husband in the wife's presence.

Defendant County of Shasta and defendants Gene Toten and Chester Ashmun, deputies of the Shasta County Sheriff's Department, appeal from a judgment finding them liable for plaintiff Linda Allen's emotional injuries suffered when she viewed her husband, an attempted suicide, being shot and wounded by defendants and other officers of the sheriff's department.

 This appeal comes to us on the clerk's transcript only. We therefore treat it as an appeal on the judgment roll. (*Kopf* v. *Milam* (1963) 60 Cal.2d 600, 601 [35 Cal.Rptr. 614, 387 P.2d 390]; *Krueger* v. *Bank of America* (1983) 145 Cal.App.3d 204, 207 [193 Cal.Rptr. 322].) 
 On such an appeal, "[t]he question of the sufficiency of the evidence to support the findings is not open. Unless reversible error appears on the face of the record, an appellate court is confined to a determination as to

whether the complaint states a cause of action,[1] whether the findings are within the issues, and whether the judgment is supported by the findings." (*Bristow* v. *Morelli* (1969) 270 Cal.App.2d 894, 898 [76 Cal.Rptr. 203]; see also *Krueger* v. *Bank of America, supra,* 145 Cal.App.3d at p. 207; *Estate of Larson* (1949) 92 Cal.App.2d 267, 268 [206 P.2d 852].) This appeal is consequently confined to the sufficiency of the complaint.

## THE RECORD

In a joint complaint, plaintiff Linda Allen alleged that on March 15, 1981, her husband, Theodore Allen, was stopped while driving and surrounded by deputies of the Shasta County Sheriff's Department.[2] At that time, the deputies knew Theodore was depressed and suicidal and armed with a loaded handgun, and that Theodore had no history or reputation for violence. Defendant Ashmun was in charge at the scene for approximately one hour, after which defendant Toten arrived and assumed command.

Linda further alleged that immediately after Theodore was stopped and surrounded and before any weapons were fired, defendant sheriff's officers directed other deputies to bring her to the scene. At the scene, defendant officers requested that she attempt to convince her husband to discard his gun and surrender. While Linda was within 100 feet and plain view of her husband, defendants shot and wounded him. The charging averment in Linda's cause of action for negligent infliction of emotional distress asserted: "By reason of the carelessness and negligence of the Defendants TOTEN and ASHMUN in bringing the Plaintiff LINDA ALLEN into the immediate vicinity and view of her husband, the Plaintiff THEODORE ALLEN, and in her presence wounding and attempting to kill the said THEODORE ALLEN as alleged in Paragraphs IV through VII above, Plaintiff LINDA ALLEN sustained great emotional disturbance and shock and injury to her nervous system."

Theodore had alleged that defendants, in attempting to dissuade him from injuring himself, carelessly and negligently "incited" him to commit actions for the purpose of drawing gunfire to himself and that defendants carelessly and negligently failed to control and restrain deputies, who engaged in wan-

---

[1]A challenge based on plaintiff's failure to state facts sufficient to constitute a cause of action is not waived by a failure to demur. (Code Civ. Proc., § 430.80, subd. (a).) Hence, this objection may be raised for the first time on appeal. (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 710 [136 Cal.Rptr. 871]; see also 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 808, p. 2418.) The clerk's transcript reveals that the complaint was never amended at any stage of the proceedings. Thus the judgment in favor of plaintiff Linda Allen stands or falls on the sufficiency of her original complaint.

[2]Plaintiff's cause of action is part of a complaint joined by her husband and his parents and sister. Plaintiff's cause of action realleges the facts of the other parties' causes of action.

ton and reckless firing of their weapons on Theodore with the intent of seriously wounding or killing him.

Linda also pled an additional cause of action for loss of consortium. Theodore's parents and sister similarly pleaded causes of action for the negligent infliction of emotional distress.

On Theodore's cause, the jury was instructed to determine whether defendants used excessive force in his arrest or were negligent in the manner in which they made the arrest, and whether any such action caused Theodore's injuries. The jury found in favor of Linda on her cause of action for emotional distress and awarded damages of $50,000. The jury, however, found against Theodore, his parents, and his sister on each of their causes of action.

The trial court denied defendants' motion for judgment against plaintiff notwithstanding the verdict. This appeal followed.

DISCUSSION

I.

Defendants contend that Linda's cause of action is predicated upon *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], and that the judgment against Theodore on his cause for negligence precludes any recovery by Linda as a matter of law. While defendants correctly interpret and apply that case, this does not dispose of their appeal because Linda's cause of action for emotional distress is not solely based upon *Dillon*.

Under the *Dillon* aspect of Linda's complaint, the judgment that defendants were neither negligent nor used excessive force in relation to Theodore precludes Linda's recovery under a bystander theory. (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 734.)[3] Linda concedes this point and argues instead that she can recover as a direct victim of defendants' negligent conduct toward her, namely bringing her to the scene. (See *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 922-923 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; *Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600 [208 Cal.Rptr. 899].)

---

[3]In *Dillon* v. *Legg, supra,* 68 Cal.2d at page 733, the court succinctly stated: "In the absence of the primary liability of the tortfeasor for the death of the child, we see no ground for an independent and secondary liability for claims for injuries by third parties. The basis for such claims must be adjudicated liability and fault of defendant; that liability and fault must be the foundation for the tortfeasor's duty of due care to third parties who, as a consequence of such negligence, sustain emotional trauma."

Defendants counter that Linda's cause of action must be construed as asserting only a *Dillon* action because plaintiff "generally concur[red]" in defendants' pretrial conference statement which referred to plaintiff's action as a "*Dillon v. Legg* cause of action, allegedly because she witnessed the shooting." This single reference to *Dillon* cannot be construed to be so limiting. It is the pretrial conference order, not the parties' pretrial statement, which is controlling. (Cal. Rules of Court, former rule 216, repealed Jan. 1, 1985.) That order provided that the "issues are as set forth in the Pretrial Statements and pleadings . . . ." The trial court's pretrial conference order consequently incorporated the pleadings, including Linda's complaint, which alleged affirmative acts of carelessness and negligence directed at Linda herself. We therefore conclude that Linda's cause is broadly enough pled to include both a *Dillon* cause ("in her presence wounding and attempting to kill . . . THEODORE ALLEN [negligently]") and a separate cause for direct negligence toward her ("bringing [her] into the immediate vicinity and view of her husband"), if, of course, such a separate cause is cognizable.[4]

## II.

We turn then to the central issue in this appeal: Does the complaint state facts sufficient to constitute a cause of action against a public entity and its peace officers for their alleged negligent infliction of emotional distress in bringing plaintiff wife to the scene of her husband's threatened suicide?[5] Our research has revealed this to be a case of first impression in California.

We begin our analysis with a statement of the underlying concept of duty in tort law: "[I]t has long been established in California that all persons owe a duty of care to avoid injury to others unless public policy clearly requires that an exception be made. (See Civ. Code, § 1714, subd. (a); *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)" (*Lipson v. Superior Court* (1982) 31 Cal.3d

---

[4]If Linda's cause of action was unclear to defendants, they could have demurred on grounds of uncertainty. (Code Civ. Proc., § 430.10, subd. (f).) Having failed to do so, defendants have waived that objection. (Code Civ. Proc., § 430.80, subd. (a).)

[5]This issue is properly before us because plaintiff concedes that the judgment can be upheld only upon a theory that she was the direct victim of defendant's negligence.

In determining the sufficiency of the complaint we are guided by the long-settled precepts relating to demurrers: "[A] general demurrer admits the truth of all material factual allegations in the complaint; that the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court; and that plaintiff need only plead facts showing that he may be entitled to some relief." (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; citations omitted.)

362, 372-373 [182 Cal.Rptr. 629, 644 P.2d 822], fn. omitted.) Hence, in the absence of an overriding public policy, whenever a person is in such a position with regard to another that, if he did not use due care in his own conduct, he would cause injury or danger to another, a duty arises to use due care to avoid such danger. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

But since "duty" implicates public policy considerations, whether it exists in a particular case is necessarily a question of law. (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) We bear in mind, moreover, that legal duties are not discoverable facts of nature, but are merely conclusory expressions of law that, in cases of a particular type, liability should be imposed for damage done. (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) Thus courts "have invoked the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow every negligent act, . . .' " (*Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701], citation omitted.) Consequently, the question of duty " '. . . is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . [b]ut it should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " (*Dillon v. Legg, supra,* 68 Cal.2d at p. 734, quoting with approval Prosser, Law of Torts (3d ed. 1964) at pp. 332-333.)[6]

■ In determining whether one owes another a duty of care, the major policy considerations to be balanced are: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian, supra,* 69 Cal.2d at pp. 112-113; accord *Thompson v. County of Alameda, supra,* 27 Cal.3d 741, 750.) Furthermore, " '[w]hen public agencies are involved, additional

---

[6]In the Restatement Second of Torts, the word "duty" is used "to denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause." (Rest.2d Torts, § 4, p. 7.) In the context of this case, the imposition of a duty on the police would mean that they must either use reasonable care to ensure that family members do not sustain emotional distress at the scene or subject themselves to liability. For the policy reasons explicated in the text, we decline to impose such a duty.

elements include "the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget; . . ." ' " (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193], citations omitted.)

While the foreseeability of harm is the initial, court-determined test of a duty of care, other policy factors may move the court to decide, as a matter of law, not to accord protection to the particular plaintiff. (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 739; *Austero* v. *National Cas. Co.* (1976) 62 Cal.App.3d 511, 516 [133 Cal.Rptr. 107] and cases cited therein.) Thus compelling public policy considerations may weigh against the imposition of liability for harm that is foreseeable. (See *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 59, fn. 14 [192 Cal.Rptr. 857, 665 P.2d 947]; *Dillon* v. *Legg, supra,* 68 Cal.2d at p. 739.)

We turn then to these controlling factors to determine whether, as a matter of public policy, liability should be imposed upon peace officers and public entities for bringing a family member to the scene of a police standoff to aid in the surrender of an armed and suicidal relative.

1. *Foreseeability of Harm to Plaintiff.*

It cannot plausibly be argued that police could not reasonably foresee that bringing the wife to the scene of a standoff between police and her armed and suicidal husband might result in emotional injury to her. The wife could predictably end up viewing the suicide itself or the killing or wounding, as in the present case, of her armed husband. None of these scenarios is so unlikely that they can be termed unforeseeable as a matter of law.

2. *Degree of Certainty That Plaintiff Suffered Injury.*

In *Dillon*, the California Supreme Court held that a mother could recover damages for emotional trauma and physical injury that resulted when she witnessed the negligently inflicted death of her infant daughter. In reaching that holding, the court rejected the contention that the imposition of liability for this emotional trauma would inundate the judiciary with a flood of fraudulent and indefinable claims. (68 Cal.2d at p. 735.) "Whatever the possibilities of fraudulent claims of physical injury by disinterested spectators of an accident, . . ." the court noted, "we certainly cannot doubt that a mother who sees her child killed will suffer physical injury from shock." (*Id.,* at pp. 735-736.) By a parity of reasoning, we too cannot doubt that a wife who sees her husband shot and seriously wounded will similarly suffer from emotional shock. The absence of any negligence on the part of the police does not, in our view, render the injury to the spouse any less certain.

3. *Closeness of the Connection Between Defendant's Conduct and the Injury Suffered.*

The assailed conduct was the act by police of bringing plaintiff spouse to the scene of: (1) her husband's threatened suicide; and (2) the standoff between her armed husband and police. Again, as with foreseeability, we cannot say as a matter of law that the connection between defendants' conduct of bringing her to the scene and plaintiff's injury was so remote as to relieve defendants from anticipating plaintiff's exposure to emotional injury. There existed the ever present possibility that plaintiff's armed husband would have to be taken by force or would commit suicide, either of which could lead directly to plaintiff's emotional injury.

4. *Moral Blame Attached to Defendants' Conduct.*

■ Police officers are responsible for guarding the safety and well-being of the community at large and hence also for dissuading potential suicide victims from taking their own lives. As was said in *People* v. *West* (1956) 144 Cal.App.2d 214, 221 [300 P.2d 729]: "Police officers are guardians of the peace and security of the community and are concerned with criminals in a complex society— '. . . and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. Among the duties of police officers are those of preventing the commission of crime, . . .'" (*Id.*, at pp. 220-221, citation omitted.) In addition to that general duty, "[w]hen any person, as a result of mental disorder, is a danger to others, or to himself . . ., a peace officer, . . . may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility [for the mentally ill] . . . for 72-hour treatment and evaluation." (Welf. & Inst. Code, § 5150.) In light of these injunctions, police officers, in our view, incur no moral blame for bringing a family member to the scene of a threatened suicide in an attempt to persuade a suicide victim to surrender his weapon, and thereby reduce the risk of harming others or himself.

5. *Policy of Preventing Future Harm.*

■ Plaintiff would argue that recognition of liability would prevent needless exposure to the emotional harm she suffered as a result of being brought to the scene of her husband's wounding. This argument overlooks the countervailing interest served by allowing or encouraging police to use all available resources, including family members, to prevent harm to the public and the person threatening suicide. While recognizing liability might insulate family members from seeing a suicide, homicide or wounding, it might

also discourage police from requesting family assistance, resulting in a greater number of violent resolutions (suicide, homicide, or wounding) of threatened suicides.

These factors force us to consider the policy question whether we should elevate the interest of protecting some family members from the emotional trauma of viewing a suicide or wounding above that of saving more lives. We have difficulty accepting the proposition that, if given the choice, a caring spouse would rather not be brought to the scene of a threatened suicide, thereby ensuring that she not view the possible demise or injury of the suicidal person, and instead risk the increased likelihood that the family member would die or be wounded.[7] This case, we note parenthetically, would not be before us had plaintiff persuaded her husband to discard his gun and surrender. In short, it does not follow that preventing emotional harm to persons in plaintiff's position would be served by discouraging police from seeking family assistance during threatened suicides.

6. *Extent of Burden to Defendant and Consequences to the Community.*

Under the previous heading, we touched on some of the points worthy of consideration here. First, as to burden on defendant police officers, in our view the police have the following interests to protect, in order of descending significance, in most threatened suicide and emergency situations: (1) the physical safety of the community, including themselves, other citizens, and family members;[8] (2) the physical safety of the potential victim (the threatened suicide); and (3) the psychological sanctity of a family member at the scene. To impose liability on police for bringing a family member to the scene of a threatened suicide would signal that the psychological sanctity of the family member is more, not less, important than of the safety and well-being of the community and the threatened suicide. Po-

---

[7]The complaint alleges that "Defendants TOTEN and ASHMUN directed other deputies to bring the Plaintiff LINDA ALLEN . . . to the scene, whereupon [she] was brought to the scene and requested by the Defendants TOTEN and ASHMUN to attempt to convince the Plaintiff THEODORE ALLEN to discard his weapon and surrender to the Defendant deputies."

The complaint does not allege that Linda was taken to the scene against her will. This, then, is not a case where officers coerced or otherwise caused the family member to be brought to the scene involuntarily. We note also that plaintiff nowhere alleged that she was in danger of physical injury from Theodore or the police or that her emotional distress was caused by fear of physical injury.

[8]"Statistically, the homicide rate is higher among persons with a history of suicide attempts, and the converse is also true: the rate of suicide attempts is higher among persons with assaultive histories. . . . The police officer should be particularly wary in cases where an individual has locked himself in his house or car and is threatening to kill himself with a gun. It only takes a moment of turning his resentment over feeling unloved outward, instead of inward, for him to begin firing at the officer." (Cooke, *Training Police Officers to Handle Suicidal Persons* (Jan. 1979) 24 J. Forensic Sci. 227, 232.)

lice officers should be able to enlist the aid of family members without the fear of lawsuits when that aid is voluntarily given. Dissuading police, by imposing tort liability if things go awry, from exercising their best judgment in calling a family member to assist in disarming a suicidal person increases the burden on them by eliminating one means for peaceful resolution of a crisis.

Second, and related, are the consequences to the community. Quite simply, the price we would pay for protecting family members from the chance witnessing of a suicide, homicide, or wounding would be the occurrence of greater numbers of suicides, homicides and woundings. In any weighing of these conflicting interests, preserving physical safety and life must be paramount. As we said in a different life-threatening context, it is for the preservation of this "paramount right to life itself . . . that we now cast our appellate votes." (*Maxon* v. *Superior Court* (1982) 135 Cal.App.3d 626, 634 [185 Cal.Rptr. 516].) Not coincidentally, family members of persons threatening suicide share this universal goal; it is only in miscarried situations as presented here that they complain about exposure to emotional injury.

### 7. *Availability, Cost and Prevalence of Insurance for the Risk Involved.*

This factor has little relevance in this case. Although public agencies may obtain insurance to cover the negligence of their employees, the imposition of liability upon them and their police officers in these crises would tend to curb the use of family members in these potentially tragic crises.

### 8. *The Extent of the Public Agency's Powers, Its Role and Budget.*

We have noted that police officers of a public agency are enjoined to keep the peace and to protect society and its members. These officers consequently are both empowered and duty bound to take into custody those who breach the peace by threatening others or themselves with firearms. (Pen. Code, §§ 417, subd. (a)(2); 417.8; Welf. & Inst. Code, § 5150.) Thus peace officers cannot decline to intervene in these life-threatening crises. Budgetary constraints do not appear relevant here.

We have expounded on the considerations underpinning a legally cognizable duty. We now undertake the task of balancing. In our opinion the policy consideration of (1) the lack of moral blame, (2) the extent of the burden on police agencies and the adverse consequences to the community of imposing liability on peace officers and their public employers, and (3) the mandatory responsibility of police officers to intervene in these dangerous and inherently explosive situations all weigh more heavily than the con-

siderations of foreseeability, certainty of injury, and proximate cause. In sum, what in the absence of these policy considerations would otherwise be a tort is not one because the utility of the conduct involved (saving lives) outweighs the gravity and likelihood of the harm threatened (emotional distress). (See *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at p. 47; Prosser, Law of Torts (4th ed. 1971) p. 149.)[9]

 ██ We therefore hold there is no tort liability for negligent infliction of emotional distress in bringing a family member to the scene of a threatened suicide because peace officers, as a matter of public policy, have no duty to prevent that person from witnessing what is obvious, potential and inherent in all such crises.[10] Since a legal duty to use due care is a necessary element of a negligence action (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* (1983) 34 Cal.3d 49, 54, fn. 3 [192 Cal.Rptr. 857, 665 P.2d 947]), and because police officers have no duty of care to prevent emotional distress of family members brought to the scene of a suicidal standoff, the judgment cannot stand. It is the duty of the family member, not the police, to weigh the risk of emotional trauma against the benefit of saving a loved one's life. Having weighed that risk, the family member, unlike the police, may decline to go to the scene. But having elected to go, the relative must be prepared not only to rejoice in a rescue but to endure the emotional burden of a tragedy as well.

## Conclusion

In sum, there being no bystander liability and no direct liability toward plaintiff, the judgment in favor of plaintiff must be reversed.[11]

---

[9]Courts have frequently declined, on either explicit or implicit public policy grounds, to recognize tort liability because of the overweighing burden imposed upon defendants and the adverse social consequences. (See, e.g., *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894] (police under no duty to warn potential assault victim); *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858] (no cause of action for loss of parental consortium); *Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275 [176 Cal.Rptr. 809] (college administrators under no duty to prevent on-campus drinking); *Smith* v. *Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929 [153 Cal.Rptr. 712] (no cause of action creating liability of a public adoption agency for negligent failure to find an infant an adoptive home); *Mikialian* v. *Los Angeles* (1978) 79 Cal.App.3d 150 [144 Cal.Rptr. 794] (no duty of police to place flares for protection of tow truck operator); *J. A. Meyers & Co.* v. *Los Angeles County Prob. Dept.* (1978) 78 Cal.App.3d 309 [144 Cal.Rptr. 186] (no duty of probation officers to disclose criminal record of probationer to prospective employer); and *Derrick* v. *Ontario Community Hospital* (1975) 47 Cal.App.3d 145 [120 Cal.Rptr. 566] (hospital under no duty to warn individuals coming in contact with person with contagious, communicable disease).

[10]Our holding, we caution, is limited to the lack of a police duty to prevent family members from sustaining emotional harm when they are brought to the crisis scene to assist the officers in defusing the explosive standoff. Police officers clearly owe a duty to the family member to use reasonable care not to expose that person to gunfire or other physical injury unconnected with the possible emotional trauma caused by witnessing what is inherent in the situation.

[11]Because, "[c]onceptually, the question of the applicability of a statutory immunity does

The judgment is reversed.

Regan, Acting P. J., concurred.

**CARR, J.**—I respectfully dissent.

The majority elected to treat this appeal as one in which the sole issue is the sufficiency of the complaint to state "a cause of action against a public entity and its peace officers for their alleged negligence in bringing the plaintiff wife to the scene of her husband's threatened suicide." As I consider the briefs and argument, appellant's contention was that this case fell solely within *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], and recovery was precluded by the judgment against her husband on his cause of action for negligence.[1] However, the majority concedes Linda's complaint encompasses not only a *Dillon* v. *Legg, supra,* cause of action but a separate cause of action for direct negligence toward her in bringing her to the scene. The majority then concludes this separate cause of action, for which harm is foreseeable, reasonably certain and connected to defendants' conduct, is not cognizable for the public policy reasons that peace officers incur no tort liability for bringing a family member to a scene of a threatened suicide because the peace officers owe no duty to prevent the family member from witnessing what is an obvious and potential danger inherent in such situations.

Having opted to determine this case solely on the sufficiency of the complaint, the majority then indulged in an unwarranted assumption of facts, which facts are necessary planks in the policy decision to disallow Linda's cause of action but which facts are totally absent from the record. The first fallacious fact is that Linda Allen consented to going to the threatened suicide scene and freely and voluntarily accompanied the police officers there and freely and voluntarily remained at the scene until her husband was shot. In the third cause of action alleged in the complaint, that of the parents and sister, it is alleged that "the defendants Hosler and Swartzenberg picked up the plaintiffs William Allen, Bettie Allen, and Millie Hay with their consent . . . in order to transport [them] to the site at which plaintiff Theodore Allen

---

not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity" (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894]), and because we hold that no such duty arose here, we do not reach the question whether defendants are immune from liability under Government Code sections 820.2 and 815.2.

[1]A defense verdict for the husband was a predictable result, as prior to the civil case, he pled guilty to a violation of Penal Code section 245, subdivision (a), assault with intent to do great bodily injury to the person of a police officer, a felony. The trial court, as required, instructed the jury on this plea and its effect.

was stopped. . . ." In the fifth cause of action Linda Allen alleges in paragraph XVIII "the defendants Toten and Ashmun directed other deputies *to bring* . . . Linda Allen . . . to the scene, whereupon . . . Linda Allen *was brought* to the scene . . . ." (Italics added.) Nothing in the record supports the majority conclusion that Linda consented to go to the scene or her action in going to the scene or remaining was voluntary.

In fact and law, all inferences are against such factual conclusions, commencing with the hornbook rule of law that all inferences are in favor of the judgment and any condition of facts consistent with the validity of the judgment will be presumed to have existed. Though this case comes to us on a so-called judgment roll appeal, it in fact includes the entire clerk's transcript, including the jury instructions.[2] A reading of the jury instructions given to the jury, as to which no error is urged, discloses that as to Linda Allen, the case was submitted on three separate theories: whether defendants "negligently brought [Linda] to the scene of the shooting . . . or negligently retained [her] there or negligently allowed [her] to participate in the events leading to the arrest of [Theodore]," which negligence "was a proximate cause of serious emotional distress to [Linda]." The jury resolved the negligence issue in Linda's favor on one or more of the three grounds of negligence submitted to them. In the absence of a full record, we must presume there was evidentiary support for these instructions to the jury and the resulting verdict. We may infer, in the absence of a record, that the evidence disclosed the officers compelled Linda, either by force or persuasion, to go to the scene, forcibly or negligently induced her to participate in persuading her husband to throw out his gun and/or negligently or forcibly retained her at the scene to witness the shooting after she insisted upon being removed from the scene. We could also infer that, having no duty to bring Linda to the scene, they nonetheless did so and having undertaken this mission were thereafter negligent in their conduct in having her participate in the negotiations with her husband or were negligent in retaining her at the scene with knowledge that if persuasion failed, her husband would be shot. This latter liability-creating situation has generally arisen when the immunity afforded public employees for the exercise of discretionary acts by Government Code section 820.2 is asserted. (See *Johnson* v. *State* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352] (state held liable for failure to disclose known propensity for viciousness of boy placed for foster care in a private home by the Youth Authority); *Green* v. *City of Livermore*

---

[2]Section 670, Code of Civil Procedure, defines a judgment roll generally as including the pleadings, the verdict, the statement of decision and orders relating to ruling on demurrers and changes of parties. However, there are two kinds of appeals which are loosely referred to as "judgment roll appeals." The first is the true judgment roll (see [Cal. Rules of Court] rule 5(f)), the other an appeal on the clerk's transcript, which includes material outside the formal judgment roll. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 399, p. 4368.) This appeal is not a true judgment roll appeal but an appeal on the clerk's transcript.

(1981) 117 Cal.App.3d 82 [172 Cal.Rptr. 461] (municipality liable for negligence of police officer in failing to confiscate car keys or otherwise disable the vehicle of a drunk driver being arrested thereby permitting an intoxicated passenger to operate vehicle and collide with plaintiff's vehicle).) Defendants herein have asserted the discretionary immunity of Government Code section 820.2. The majority has not addressed this issue but it becomes an issue, albeit a losing one for defendants, in the context of the case as I view it. In their brief defendants concede that "the action of requesting Linda Allen to come to the scene was negligent and careless." The concession of negligence is required, also conceded by defendants, by the nature of appeal on the clerk's transcript. Defendants however, as the majority has done, misconstrue the nature of their concession of negligence. The complaint does not allege that plaintiff Linda was "requested" to come to the scene. It alleges she was "brought." This act of "bringing" may well be the basis of the jury's finding of negligence. But, assuming arguendo, that the officers were engaged in a discretionary act in taking Linda to the scene, having made that decision to take her to the scene, they had a duty to act with due care, or nonnegligently, in retaining her at the scene and requiring or permitting her to participate in persuasions with her husband, which, if unsuccessful, would result in foreseeable violence and foreseeable emotional harm to Linda.

This brings us to the second unwarranted assumption of fact by the majority: that "the police, acting lawfully and without negligence" brought Linda to the scene "of a standoff between the police and her armed and suicidal husband." Linda alleged negligence in her complaint and the jury by special verdicts[3] found negligence on the part of the officers.

The majority's rejection of Linda's cause of action can be justified only if we conclude that for policy reasons negligence of peace officers, whatever form that negligence may take, in bringing a family member to the scene of a threatened suicide in an attempt to persuade the prospective suicide victim to surrender his weapon is excusable and nonactionable because to impose liability would have a chilling effect on the performance of police officers in fulfilling their duty to prevent the commission of crime. This is somewhat analogous to asserting that denying the admission of coerced confessions, non-Mirandized statements and illegally obtained evidence would have a chilling effect on the performance of police officers in apprehending criminals.

The evidence in this case may not support a finding of negligence toward Linda Allen by the officers in question. But if the sufficiency of the evidence

---

[3]In a special verdict form, the jury found both Officers Toten and Ashmun to be negligent and apportioned that negligence 60 percent to Toten and 40 percent to Ashmun. Linda was found to be not negligent in any manner.

was a viable issue, it was the responsibility of the defendants to bring to this court a record of that evidence so we could assess the sufficiency. They have failed to so do. I refuse to speculate what evidence was presented to the triers of fact, the jury, and would affirm the judgment.

Respondent's petition for review by the Supreme Court was denied January 16, 1986.