Filed 6/30/14  Estate of Mays CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| Estate of MERVER LEE MAYS, Deceased. | |
| TOBY DOUGLAS, as Director, etc., | C070568 |
| Petitioner and Respondent, | |
| v. | (Super. Ct. No. PR77507) |
| BETTY BEDFORD, Individually and as Administrator, etc., | |
| Objector and Appellant; | |
| ROY FLEMONS, | |
| Real Party in Interest. | |

Betty Bedford brings this pro se judgment roll appeal from a judgment entered in favor of the Department of Health Care Services (DHCS) after an unreported bench trial concerning Bedford's administration of the estate of her mother, decedent Merver Lee Mays.  DHCS sought an accounting in view of its creditor's claim for reimbursement of

$83,000 in Medi-Cal benefits provided to Mays before she died. The probate court ruled that Bedford, whose petition for appointment as administrator of the estate was granted pending issuance of a bond, could not disavow her fiduciary obligation to the estate notwithstanding her subsequent failure to secure the requisite bond, and Bedford's failure to fulfill her fiduciary duties as acting administrator rendered her liable to DHCS for amounts owed on its creditor's claim.

Bedford contends the probate court erred in finding her liable to pay any portion of DHCS's creditor's claim because she was never formally appointed administrator of the estate, and the $75,000 she received from her brother in "settlement" of the estate did not represent estate property.

While we disagree with the probate court's reasoning, we agree with its conclusion on other grounds. We conclude Bedford is liable to DHCS because as an heir, she received estate property to which DHCS was entitled by virtue of its valid and unpaid creditor's claim. Accordingly, we affirm the judgment.

BACKGROUND

We treat this case as an appeal on the judgment roll, because it reaches us based on a clerk's transcript. (Cal. Rules of Court, rule 8.832 (undesignated rule references are to the California Rules of Court); cf. *Dumas v. Stark* (1961) 56 Cal.2d 673, 674; *Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082-1083.) When the case is presented in this posture, we presume the trial court's findings of fact are supported by substantial evidence, and its conclusions of law are binding upon us unless error appears on the face of the record. (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.)

Mays died intestate in April 2006. She was survived by two children, appellant Bedford and Roy Flemons. At her death, Mays lived in a home on West 4th Street in Stockton (the residence).

After Mays's death, Bedford petitioned to be appointed administrator of the estate. In her petition, Bedford declared Mays's estate consisted principally of the residence,

2

which Bedford valued at $245,000. The probate court granted Bedford's petition, and indicated letters of administration would issue "upon filing [of a] Surety Bond in the sum of $245,000."

Thereafter, DHCS filed a creditor's claim in the probate action in the amount of $83,799.03 for health care services and premiums paid by Medi-Cal on Mays's behalf. Flemons filed a creditor's claim for $35,147.36 for expenses related to the residence.

Bedford never posted the bond and letters of administration were never issued. She nonetheless filed a "Personal Representative's Allowance or Rejection" form allowing only $3,559 of the claim by Flemons and rejecting the balance. Bedford also filed a final inventory and appraisal, and petitioned for final distribution of the estate and approval of attorney fees. In that petition, Bedford averred Mays's estate consisted wholly of the residence,[1] and DHCS's creditor's claim in the amount of $83,799.03 "has been approved and will be paid from the proceeds of the sale of" the residence.

Just prior to Mays's death, Flemons had deeded the residence to himself using a power of attorney granted by Mays, and he objected to Bedford's petition for final distribution of the estate by asserting he, not the estate, was the sole owner of the residence. Bedford petitioned the probate court for an order determining ownership of the residence (Prob. Code, § 850), and the probate court ruled Mays's estate owned a one-half interest in the residence, and Flemons owned the other half, as his separate property.

Flemons did not transfer to the estate its one-half interest in the residence and the probate court did not act on Bedford's request for final distribution of the estate. Instead, Bedford and Flemons reached a written "settlement" intended to "resolve all claims disputed and undisputed." Flemons agreed to pay Bedford and her attorney $75,000 and,

---

[1] In the final inventory and appraisal, the probate referee stated the residence's appraised value was $280,000.

3

in return, Bedford agreed to "release any and all claims known and unknown," and agreed her attorney would cease all litigation activity. An "order for settlement," which recites the settlement terms, and indicates nothing about paying DHCS's outstanding creditor's claim, was signed by the probate court. Thereafter, Flemons transferred the residence in its entirety to himself and his wife in joint tenancy and used the residence as security for a $90,000 loan.

DHCS initiated a separate civil action against Flemons and Bedford (in her individual capacity and as the personal representative of Mays's estate) for reimbursement of the $83,799.03 it expended on Mays's behalf for health care services and premiums (*Maxwell-Jolly v. Bedford*, San Joaquin Superior Court case No. 39-2009-00221877-CU-CO). A default judgment was entered in the civil action against Flemons for $70,000 plus interest and Bedford in her individual capacity for $75,000 plus interest and in her representative capacity for $83,799.03. Bedford's appeal from the denial of her motion to set aside the default judgment entered in the civil action was dismissed.

While its civil action was pending, DHCS filed the instant petition in the probate court for an order requiring Bedford, as Mays's personal representative, to account for her administration of Mays's estate. Specifically, DHCS sought an accounting of the estate's one-half interest in the residence, and of Bedford's receipt of $75,000 from Flemons in the settlement. Bedford and her attorney filed reports in response to the petition, to which DHCS objected.

After an unreported court trial, at which Bedford, Flemons, and DHCS's representative testified, the probate court ruled DHCS has a valid claim against the estate for $83,799.03 and Bedford is liable to DHCS in the amount of $66,750 (the $75,000 she received from Flemons, less the fees she paid to her attorney).[2]

---

[2] The probate court also found Flemons liable to DHCS for the entire amount of its creditor's claim, and ordered a lien securing payment of the claim on the estate's one-half

4

The probate court issued a lengthy statement of decision it incorporated into the judgment. In the court's view, Flemons, Bedford, and her attorney all "thought they found a way to get what they wanted without dealing with [DHCS's] claim." The court rejected Bedford's assertion she made the settlement in her "individual capacity as an heir of the estate and not as an Administrator" by virtue of her failure to post the required bond. Rather, "Bedford was acting as Administrator in the estate even though she was not properly authorized to do so. She filed an Inventory and appraisal, acted upon Creditor's Claims, filed a Petition for final distribution, and filed a [Probate Code section] 850 petition [to resolve competing claims to residence], all as Administrator. While Bedford never completed the steps required to have Court authorization to undertake the actions described above, she nonetheless *acted* as Administrator. Once these steps were taken, Bedford [was] not able to then disavow her role as Administrator and claim she [was] simply a beneficiary of the estate regarding the settlement. She owed a fiduciary obligation to the estate, which includes a duty to the heirs and the creditors. [¶] . . . [¶]

"Once the Court ruled that one-half the property belonged to the estate, the Administrator was obligated to treat it as estate property and take appropriate action. Given the facts of this estate, she probably would have needed to liquidate the half interest to create the cash needed to pay estate bills and expenses. That would include filing a new or amended Petition for Final Distribution and bringing the estate to a close. The Petition would have also addressed the claim of DHCS. The failure to take those steps leaves her liable for the debt to DHCS in an amount not to exceed the $75,000 she received in the settlement," reduced by the amount she paid from that sum to her attorney for his fees.

_____

interest in the residence; the court found Bedford's attorney liable to DHCS to the extent of the fees he received.

5

DISCUSSION

# I

## *Applicable Standards of Review*

A judgment or order of the trial court is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*); *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977-978.) It is the appellant's burden to affirmatively demonstrate reversible error. (*Denham*, at p. 564; *In re Marriage of Gray*, at pp. 977-978.)

It is also the appellant's burden to provide an adequate record to assess claims of error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) When, as stated above, an appeal is "on the judgment roll" (*Allen v. Toten*, *supra*, 172 Cal.App.3d at pp. 1082-1083), we must conclusively presume evidence was presented that is sufficient to support the court's findings, and our review is limited to determining whether any error appears on the face of the record. (*Bond v. Pulsar Video Productions, supra,* 50 Cal.App.4th at p. 924; rule 8.163.)

Lack of legal counsel does not entitle a litigant to special treatment. A party representing himself or herself is to be treated like any other party and is entitled to the same, but no greater, consideration than other litigants and attorneys. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

# II

## *Bedford is Liable to DHCS because She is an Heir and Received Property from the Estate*

The probate court found DHCS has a valid claim against the estate for reimbursement for Medicaid benefits of $83,799, and the "amount sought is correct and

6

due."[3]  The court then concluded Bedford was liable to DHCS in her capacity as administrator because, although she never posted the requisite bond and was never formally appointed administrator of the estate, she "nonetheless *acted* as Administrator," owed fiduciary duties to the estate and its creditors, and Bedford's "failure to take th[e] steps" necessary to address DHCS's creditor's claim "leaves her liable" to DHCS.

It is undisputed Bedford's failure to secure the requisite bond prevented letters of administration from issuing.  (Prob. Code, § 8480.)  Thus, Bedford's appointment never became effective.  (Prob. Code, §§ 8400, 8405.)

It is long established in California that where, as here, "no letters were ever issued, and it affirmatively appears that no bond was ever filed, nor oath taken," the probate court cannot recognize an "administrator de facto.  No person can fill that position, except after due appointment and qualification," and the actions of such a "pretended administrator" have no effect.  (*Pryor v. Downey* (1875) 50 Cal. 388, 399-400; see also *Lamkin v. Vierra* (1961) 198 Cal.App.2d 123, 127-128.)  Thus, we must agree with Bedford that her obligation to DHCS cannot rest, as the probate court reasoned, on her failure as "acting" administrator to file a new or amended petition for final distribution of the estate that would provide for resolution of DHCS's creditor's claim.

This does not end our review because there are other grounds for concluding DHCS was entitled to recover from Bedford the amount of its claim against the estate, up to the value of estate property she received.  (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [we review the correctness of the trial court's ruling, not its reasoning].)  As an heir who received estate property, Bedford is liable to DHCS for the reimbursement of Medi-Cal benefits provided to Mays before she died, in an amount

---

[3]  On appeal, Bedford challenges neither the validity of the claim nor the accuracy of the amount claimed.

equal to the payments for the health care services received *or* the value of the estate property received by Bedford, whichever is less.

California participates in the federal Medicaid program and must comply with the Medicaid Act in exchange for federal contributions to the cost of care provided to needy individuals. (*Maxwell-Jolly v. Martin* (2011) 198 Cal.App.4th 347, 353-354; 42 U.S.C. § 1396a.) California participates in the Medicaid program through its California Medical Assistance Program, codified as the Medi-Cal Act (Welf. & Inst. Code, § 14000.4) and set forth in sections 14000 through 14198.2 of the Welfare and Institutions Code. (42 U.S.C. § 1396p(b)(1); see generally *California Advocates for Nursing Home Reform v. Bontá* (2003) 106 Cal.App.4th 498, 508–509.)

If an applicant for Medicaid benefits is over the age of 55, his or her principal residence is excluded when determining eligibility for benefits. This exclusion allows elderly applicants, despite having a valuable asset, to qualify for Medicaid covered services. (42 U.S.C. § 1382b(a)(1).) But federal law requires that the state recover all or a portion of the Medicaid benefits paid during the recipient's lifetime from his or her estate at death. (See *California Advocates for Nursing Home Reform v. Bontá, supra,* 106 Cal.App.4th at pp. 498, 508–509.) Accordingly, DHCS must seek reimbursement from the deceased recipient's estate or from recipients of property from the decedent by distribution or survival. (Welf. & Inst. Code, § 14009.5, subd. (a).) Welfare and Institutions Code section 14009.5, subdivision (a), provides in pertinent part as follows: "Notwithstanding any other provision of this chapter, the department shall claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival an amount equal to the payments for the health care services received or the value of the property received by any recipient from the decedent by distribution or survival, whichever is less." Property once held by the decedent and transferred to heirs is part of the decedent's estate and is subject to recovery under the same statute. (*Belshé v. Hope* (1995) 33 Cal.App.4th 161, 164.)

8

Bedford insists on appeal the $75,000 she received from Flemons as an incentive "to disclaim any interest as a beneficiary in the estate" is not estate property subject to DHCS's claim pursuant to Welfare and Institutions Code section 14009.5, subdivision (a). Instead, Bedford asserts the $75,000 is a sum Flemons "borrowed" from his "separate property," and thus cannot be recovered by DHCS. But Bedford fails to support the assertion she received only Flemons's separate property with citations to the record. Thus, she has not borne her burden on appeal of affirmatively demonstrating error. (Cf. *Denham, supra,* 2 Cal.3d at p. 564; *In re Marriage of Gray*, *supra*, 103 Cal.App.4th at pp. 977-978.)

Moreover, as we have explained, we must indulge all presumptions in *support* of the judgment. Consequently, we presume the trial court properly found Bedford to have received estate property otherwise owed to DHCS in payment of its creditor's claim. That presumption is supported by the trial court's factual findings. The court noted Bedford and Flemons settled only *after* the court ruled Mays's estate owned a one-half interest in the residence. The estate's interest in the residence was $140,000, or half the residence's appraised value and, as one of two heirs, Bedford's one-quarter interest in the residence's value was $70,000. This is very close to the $75,000 sum she received in settlement from Flemons. The trial court's finding that Bedford's settlement with Flemons was "essentially an end-run around the creditor's claim and the estate process" supports the conclusion the $75,000 payment represented proceeds of the estate that would otherwise be available to satisfy creditors' claims. This finding may not be challenged on this limited appellate record. (Cf. *Denham, supra*, 2 Cal.3d at p. 564.) Nor does error appear on the face of the record. (Cf. *Bond v. Pulsar Video Productions, supra,* 50 Cal.App.4th at p. 924; rule 8.163.) Indeed, Bedford admitted before trial that Flemons "purchased" her "share" and she "had wanted the case over and [Flemons] offered to pay her $75,000 for her share of the estate." These admissions indicate Bedford understood the cash she received from Flemons to be part of Mays's estate.

9

For the reasons stated in this opinion, we conclude the probate court did not err in allowing DHCS to recover from Bedford the value of estate property she received, as partial payment of its valid and unpaid creditor's claim.

## DISPOSITION

The judgment is affirmed.  Department of Health Care Services is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


      HOCH    , J.


We concur:


     BLEASE   , Acting P. J.


     DUARTE   , J.