Filed 5/26/21  Estate of Harshine CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| Estate of JIMMIE HARSHINE, Deceased. | C088839 |
| LINDA H. LOPEZ, as Special Administrator, etc., Petitioner and Respondent, v. JOYCE TRUTTMAN, Objector and Appellant. | (Super. Ct. No. CVPB 15-1308) |

In this judgment roll appeal, Joyce Truttman challenges the trial court's determination that Special Administrator Linda H. Lopez acted with due care even though the estate of Jimmie Harshine sustained substantial property losses due to water damage and numerous burglaries.  After an evidentiary hearing, the trial court found that Lopez acted with the ordinary care and diligence owed by a special administrator of an estate.  Truttman appeals.

1

On appeal, Truttman contends (1) the trial court's finding that Lopez fulfilled her duties as special administrator must be reversed because Lopez did not testify on her own behalf, (2) the trial court abused its discretion by declining to hold Lopez liable for the estate's losses under the doctrine of unclean hands, (3) the trial court misapplied Probate Code section 8480, subdivision (b),[1] in exonerating the bond posted on behalf of Lopez, and (4) the trial court abused its discretion in awarding attorney fees and costs to Lopez.

We conclude that Lopez was not required to testify on her own behalf about her efforts as the estate's special administrator. We deem Truttman's argument about the doctrine of unclean hands to be forfeited for lack of any citation of the appellate record. The trial court properly ordered the special administrator's bond exonerated because Truttman did not establish any dereliction of duty by Lopez. Truttman has forfeited her challenge to costs and fees due to deficient briefing. Accordingly, we affirm the trial court's order.

## BACKGROUND

Truttman has elected to proceed solely on a clerk's transcript. (Cal. Rules of Court, rule 8.121.) Consequently, this is a judgment roll appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082-1083.) In the absence of a reporter's transcript or settled statement, we draw the facts from the trial court's findings after hearing. After an evidentiary hearing, the trial court made the following findings:

### *Lopez Serves as Special Administrator*

Harshine died on October 4, 2015. Harshine's estate includes a large residential property in a rural area of Siskiyou County. The property consists of a mobile home and various outbuildings such as garages and storage buildings. The trial court found that "[t]he neighborhood is such that the homes are hundreds of yards apart. Water is

---

[1]     Undesignated statutory citations are to the Probate Code.

2

supplied by a well and pump. During dark periods, the property may be lit by flood lights mounted on a pole or other structure." Lopez resides outside Siskiyou County "and a good distance away" from Harshine's property.

Truttman "is a neighbor to the property and has the ability to easily access the property without substantial travel from her home." The day after Harshine died, Truttman went onto his property and removed personal property. Truttman did not provide Lopez or the probate referee with an inventory of items that she removed.

On December 3, 2015, Lopez was appointed as special administrator of Harshine's estate. Soon after being appointed, Lopez entered Harshine's property to inventory and secure the property. Lopez rekeyed Harshine's mobile home and purchased padlocks to secure the outbuildings and gates. Lopez's husband testified that he accompanied her to the property to help with the inventory.

### Water Damage

In January 2016, Lopez learned that there was a leak at the pump house. She hired Siskiyou Electrical and Plumbing (Siskiyou Electrical) to fix the leak. Rick George was the plumber assigned to the job. George testified that the leak was inside the pump house and caused by water damage. He found the source of the leak and fixed it. That same month, Lopez hired Siskiyou Electrical to turn the power off to the well pump. Kirk Bersch was the employee assigned to the job. When he arrived, Bersch found the pump house to be locked. Unable to enter the pump house, Bersch turned the power off to the pump house. Without power, the well pump could not operate. While on the property, Bersch noticed there was standing water around the mobile home. Although he suspected a leak, Bersch did not investigate. Turning off the power to the pump house would stop water from entering the home but would not prevent water already inside the pipes from leaking. Bersch noted the standing water on the work order and believed that the work order should have been sent to the customer. The trial court recounted that Bersch did

3

not testify that he observed any water flooding the residence or flowing from inside the residence to the outside.

In fall 2016, Lopez again hired Siskiyou Electrical to " 'winterize' " Harshine's property. George was assigned to the job. George testified that he used an air compressor to blow water out from the pipes and used antifreeze to fill some of them. According to George, "winterizing the property was a good practice and was commonly done in this area."

Debby Stewart is a close neighbor and can see the Harshine property from her kitchen window. Stewart tried to help keep watch over the property. Stewart testified that sometime during 2016, she "saw water flowing down the front porch steps of the residence and into the driveway." Stewart's boyfriend called Truttman's husband to inform him about the water flow. The trial court noted that there was no evidence at the hearing that Truttman or anyone else informed Lopez about the water flow. There was also no evidence that "about when during the year . . . Stewart observed the water flowing or that anyone verified that the water was actually flowing from the interior of the house to the exterior."

The trial court noted that it "was not clear to the court if the water that . . . Stewart observed outside was the same standing pool of water that . . . Bersch testified as having observed in January, 2016. . . . George testified that there was no evidence of water damage inside of the home when he was present in the fall of 2016 to 'winterize' the property. He did not testify as to whether he saw water standing outside of the residence at that time."

### Burglaries

Truttman testified that seven burglaries occurred on the property during the time when it was unoccupied. Stewart called Truttman about seven times to report "strange activity on the property." Stewart once observed someone in a vehicle ram the gate to get

off the property when Stewart and her boyfriend drove to the Harshine property to investigate the presence of an unknown vehicle.

Truttman called the police each time there was a burglary on the property. She gave Lopez's contact information to the officers but does not know whether the police ever contacted Lopez about the burglaries. Truttman attempted to stop the burglaries by mowing the yard, installing a camera system, and boarding broken windows in the residence. Nonetheless, the burglaries continued and the camera system was stolen.

At some point, Lopez "was informed that the property had been burgled once . . . ." Lopez and her husband went to the property to secure it again and to prevent future burglaries. Lopez's husband testified that he heard there was a second burglary but was not informed about any other burglaries. Truttman testified that she did not contact Lopez after each burglary. The trial court found that "[t]here was no evidence presented that anyone contacted [Lopez] or her attorney after the first two burglaries."

### Truttman Takes Over as the Estate's Administrator

On April 14, 2017, Truttman took possession of the estate after being appointed as the estate's administrator. On that date, Truttman entered the mobile home and discovered that it was flooded. The flooding had caused extensive damage to the interior of the residence. In July 2017, Truttman hired a general contractor to inspect the residence and assess the damage. The contractor found the leak had already been fixed but that the interior of the residence was still wet. The water damage extended throughout the mobile home. In July 2018, the contractor was asked to reinspect the residence for purposes of updating the estimate of costs for repairs. No repair had been accomplished during the year between his first and second visits.

### The Trial Court's Order

The trial court determined that Lopez fulfilled her duties as special administrator by taking reasonable steps to secure Harshine's property. In making this determination,

the trial court noted that Truttman "was required to present evidence regarding the lack of reasonableness of [Lopez's] conduct under the circumstances of the case. She [has] failed to do so."

As to the water damage, the trial court found: "The evidence demonstrates that [Lopez] was made aware that there was water leaking from the pump house and she employed a plumber to inspect and repair the leak. In addition, the plumber was asked to cut the power to the pump house so that water would not continue to be pumped from the well and onto the property. . . . Water was not available to the property without turning the power back on." On the basis of this evidence, the trial court noted: "The question that was not answered by the evidence is how the power was restored to the property and the water pump. . . . There was no evidence presented regarding the issue of who turned the power on again and whether, after the power was turned on, the pump was operational. Finally, there was also no evidence demonstrating [Lopez's] knowledge that the power was turned back on or any fact that gave [Lopez] reason to believe that there might be an issue with the property after it was winterized."

The trial court further found that "[t]he property . . . would have been difficult to secure without employing a caretaker to actually reside on the property," a step that was not specifically enumerated as one that a special administrator may take. The trial court remarked, "It is noteworthy that [Truttman] reasonably attempted to secure the property against additional theft by taking additional steps to install a security camera, board up the broken windows, and once more lock the buildings. Despite these reasonable efforts, burglaries continued on the property. [Truttman] offers no evidence or argument regarding what additional reasonable steps [Lopez] might have taken to preserve the estate."

The trial court rejected Truttman's argument that Lopez's failure to testify on her own behalf established a dereliction of duty. "It is [Truttman's] burden to present sufficient evidence that will allow the court to find that [Lopez] acted unreasonably and

6

breached her duty of care by doing so. [Truttman] cannot shift that burden by arguing that the court should consider [Lopez's] failure to testify as evidence that she had no defense. It is not [Lopez's] obligation to present a defense until and unless [Truttman] meets her burden of proof. Once she has done so, the burden shifts to [Lopez] to present evidence that she acted reasonably. [Lopez] is by no means required to personally testify and her failure to do so may not be considered by the court as evidence of breach. . . . [Lopez] presented adequate evidence that she acted reasonably under the circumstances of this case without testifying."

Based on these findings, the trial court ordered that (1) Truttman take nothing on her claim that Lopez breached her duties as special administrator, (2) Lopez receive reasonable compensation and costs as special administrator, (3) the $100,000 bond posted by US Specialty Insurance Company on Lopez's behalf be exonerated, and (4) Lopez be awarded her attorney fees and costs. The trial court also set a date for the hearing on final distribution.[2] From the trial court's order, Truttman timely filed a notice of appeal.

## DISCUSSION

### I
### *Lack of Testimony by Lopez*

Truttman contends the evidence at trial showed that Lopez failed to use ordinary care and diligence in her capacity as special administrator and thus caused losses to the Harshine estate. We are not persuaded.

On a judgment roll appeal, we conclusively presume the evidence introduced during a hearing was sufficient to support the trial court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Thus, our review is limited to determining whether any error "appears on the face of the record." (*National Secretarial Service, Inc. v.*

---

[2] The record in this appeal does not contain documents relating to a hearing or any order on final distribution.

*Froehlich* (1989) 210 Cal.App.3d 510, 521; Cal. Rules of Court, rule 8.163.) On the face of the record, nothing undermines the trial court's conclusion that Truttman did not meet her burden of proof to show that Lopez failed to exercise ordinary care and diligence in taking care of the Harshine estate or that Lopez presented substantial evidence that she acted reasonably under the circumstances. Without a reporter's transcript of the evidentiary hearing, Truttman has not supplied an adequate record to challenge the trial court's factual findings. (*Ehrler v. Ehrler*, at p. 154.)

We reject Truttman's assertion that Lopez's failure to testify prevented the trial court from finding that Lopez acted with due care. Truttman offers no legal authority in support of this proposition. However, "[t]o demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3.) When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' (*Atchley v. City of Fresno* [(1984)] 151 Cal.App.3d [635,] 647 . . . .)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Moreover, the type of substantial evidence that can support a trial court order does not require the testimony of any particular witness. "[I]t is elementary that the testimony of only one witness found worthy of belief is sufficient for the proof of *any fact* and justifies a finding in accordance with such testimony, notwithstanding a number of other witnesses have testified to the contrary." (*Michael Distributing Co. v. Tobin* (1964) 225 Cal.App.2d 655, 660-661, italics added; Evid. Code, § 411 ["Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact."].) Here, the testimony of witnesses introduced on behalf of Lopez constituted sufficient evidence to establish that Lopez acted with the requisite care demanded of a special administrator.

## II
### *Unclean Hands*

Truttman next argues that the trial court should have credited her "*evidence* of . . . Lopez's 'unclean hands' breach of her fiduciary duties as Special Administrator of the Harshine estate." (Italics added.) In support of this argument about her evidence, Truttman does not offer a single citation to the appellate record. The California Rules of Court require that statements of fact in an appellate brief be supported with citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 29 ["It is axiomatic that an appellant must support all statements of fact in his briefs with citations to the record . . . ."].)

In the absence of any record citations, we may decline to address an argument on the merits. "When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. [Citations.] We can simply deem the contention to lack foundation and, thus, to be forfeited." (*In re S.C., supra,* 138 Cal.App.4th at pp. 406-407.) Accordingly, the argument is deemed forfeited.

## III
### *Exoneration of the Probate Bond Posted by Lopez*

Truttman argues that the trial court erred in ordering exonerated the $100,000 bond posted by US Specialty Insurance Company on behalf of the special administrator. In Truttman's view, the trial court's order violated section 8480, subdivision (b). We reject the argument.

Truttman's argument depends on her assertion that "in her decision Judge Dixon had actually found . . . Lopez breached her fiduciary duties as Special Administrator of the Harshine estate." This assertion is unsupported by a citation to the appellate record. Examination of the trial court's findings after hearing shows that Truttman misrepresents the findings in the order. Rather than finding that Lopez breached her duties as special

9

administrator, the trial court expressly found that (1) Truttman's evidence did not prove that Lopez acted in dereliction of her duties, and (2) Lopez's evidence established that she acted with due care. Thus, Lopez was found to have faithfully executed the duties of her position as special administrator.

Subdivision (b) of section 8480 provides that a bond posted by a personal representative of an estate "shall be for the benefit of interested persons and shall be conditioned on the personal representative's faithful execution of the duties of the office according to law." Because Lopez faithfully executed the duties of her office, the trial court properly ordered exonerated the bond posted on her behalf. Truttman has not established error in the exoneration of the bond.

## IV
### *Costs and Fees*

Truttman argues that the trial court erred in awarding attorney fees and costs to Lopez. In support of her argument about fees and costs, Truttman offers no citations to the appellate record. As we explained above in part II, an argument advanced without citation to the record in support of factual assertions need not be reviewed on the merits. (*In re S.C., supra,* 138 Cal.App.4th at pp. 406-407.) We are not required to search the appellate record in support of Truttman's assertions about the reasonability of fees and costs awarded by the trial court. (*Ibid.*) The argument is deemed forfeited.

## DISPOSITION

The probate court's order is affirmed.  Lopez shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                        /s/
                                        HOCH, J.



We concur:



 /s/
BLEASE, Acting P. J.



 /s/
HULL, J.