Filed 5/7/14  Montgomery v. D'Ottavio CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| SANDRA GAY MONTGOMERY, | C073411 |
| Plaintiff and Respondent, | (Super. Ct. No. CVDV122584) |
| v. | |
| MARK D'OTTAVIO, | |
| Defendant and Appellant. | |

Sandra Gay Montgomery obtained a domestic violence restraining order against her brother, Mark D'Ottavio, enjoining him from contacting her or her two adult children. (Fam. Code, § 6300 et seq.)[1]  In this judgment roll appeal, Mark[2] asks us to reverse the restraining order because the facts contained in Sandra's petition do not constitute

---

[1] Undesignated statutory references are to the Family Code.

[2] Because the facts involve individuals with the same surname, we refer to the parties and others by their first names.

"abuse" within the meaning of the Domestic Violence Prevention Act. (§ 6200 et seq.) But because Sandra also testified at the unreported hearing on her petition, we cannot conclude the evidence does not support the trial court's decision to issue the order. We shall affirm.

## BACKGROUND

Mark has elected to proceed on a clerk's transcript. (Cal. Rules of Court, rule 8.122.) As a result, the appellate record does not include a reporter's transcript of the hearing that gave rise to the restraining order challenged in this appeal. This is referred to as a "judgment roll" appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082-1083 (*Allen*); *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.)[3]

In December 2012 Sandra filed a petition requesting a domestic violence restraining order. According to the request, the most recent abuse had occurred on December 13, 2012, when Mark (who lives in Colorado) sent e-mails consisting of "[l]ife threats, mental battering, verbal ass[a]ults on me & my daughter [and] st[al]king" over the Internet. According to Sandra, the "2nd most recent abuse" occurred two days later, when her son and husband read the e-mail "threats, harming me, retribution, for what I do not know. [Mark] is delusional and because I am bipolar and have a panic/disorder he uses this against me."

Attached to the petition were (1) three e-mails sent by Mark to Sandra in February 2009, March 2011, and on December 12, 2012, respectively, each of which was shared by Sandra with others; (2) an e-mail exchange in June 2009 between Mark and Sharon Lynch, another of Mark's sisters, apparently initiated by Mark and then forwarded by

---

[3] Although Sandra has not filed a respondent's brief and we may accept as true the facts stated in Mark's opening brief (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1077-1078; Cal. Rules of Court, rule 8.220(a)(2)), Mark still bears the " 'affirmative burden to show error whether or not the respondent's brief has been filed,' " and we " 'examine the record and reverse only if prejudicial error is found' " (*Smith*, at p. 1078).

2

Sharon to various other individuals, including Sandra; and (3) several e-mails exchanged on December 13, 2012, between Sandra's adult daughter Bobbie and Mark, apparently initiated by Bobbie.

The e-mails to Sandra do not contain what could reasonably be construed as threats of physical violence against or future harassment of her or her children.[4] Rather, they are rife with fierce criticism of her and contempt for her parenting, past deeds, and life choices.[5] Mark's e-mails to Sandra and Bobbie—while far from overflowing with familial pleasantries—likewise contain nothing that could be construed as a threat of physical violence or future harassment. The trial court declined to issue a temporary restraining order on the ground Sandra failed to show reasonable proof of a past act or acts of abuse.

In his response to Sandra's petition, Mark asserted: "This action is without merit. It is simply an attempt to be punitive and to exploit the court[']s time, resources and good will. There are no threats (documented or otherwise) being made towards [Sandra] nor

---

[4] Mark did write in February 2009 that, as to one of Sandra's brothers, "the only business I want to conduct with Jack [is] to hand him the most savage beating that idiot has ever sustained."

[5] For example, Mark writes: "Once again you demonstrate by virtue of your actions you have zero boundaries, have not a modicum of common sense and will do and say ANYTHING TO MAKE YOURSELF look like some sort of victim. Yeah, poisoning the balance of the family against me is typical of your deeply flawed reasoning. [¶] You should be ashamed of yourself and understand all the Ill will you continue to spew will come back on you 100 fold. [¶] All [sic] long as you continue to make these deeply flawed, self serving and borderline decisions along with all your lies you'll never get past the label of whackadoo" and ". . . I do not have ANY desire to be part of your or your brothers [sic] existence. You've lied to me, demonstrated dozens and dozens of times you cannot be trusted with anything related to me or my family's well-being much less the most casual facts surrounding my family as its [sic] clear all of you are certainly not deserving of our devotion, loyalty nor attention. This is the fact because of your collective poor decisions as alleged adults, disastrous parenting choices and your collective mismanagement of your family of origin liabilities."

her adult children. The original transcript provided (which I haven't received by the court) represent dialogue between [Sandra's] adult child and myself describing her mother's erratic behavior and poor personal choices. I live nearly 1,200 miles away from [Sandra] in the state of Colorado and haven't physically spoken to her in approximately 10 years. The last time I contacted [Sandra] directly was approximately 4 years ago and that was via email. . . . [Sandra] suffers from well documented mental illness and uses all resources (justified or not) to harass me and loved ones in our family. Please instruct [Sandra] to cease and desist from engaging in such egregious behavior. This is a perfect example of a spurned loved one trying to retain relevancy in a family's unfortunate dysfunction." (Paragraph breaks omitted.)

Following the unreported hearing on Sandra's petition, at which she alone appeared, was sworn in, and testified, the court granted the petition and ordered that Mark not contact, harass, threaten, or strike Sandra.

## DISCUSSION

### I. *Standards Applicable to this Appeal*

On appeal, we must presume the trial court's judgment or order is correct. (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649-650.) Error is never presumed; rather, we adopt all inferences in favor of the judgment or order appealed from, unless the record expressly contradicts them. (*Brewer v. Simpson* (1960) 53 Cal.2d 567, 583; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.)

It is the burden of the party challenging an order on appeal to provide an adequate record to assess error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) An appellant must present an analysis of the facts and legal authority on each point made, and also must support the arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited. (*County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1274; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

4

Because Mark has chosen to appeal "on the judgment roll" (*Allen*, *supra*, 172 Cal.App.3d at pp. 1082-1083), we " 'must conclusively presume that the evidence is ample to sustain the [trial court's] findings.' " (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154 (*Ehrler*).) Our review is limited to determining whether any error "appears on the face of the record." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521; see Cal. Rules of Court, rule 8.163.)

## II. *Mark Failed to Show the Trial Court Abused its Discretion in Issuing a Restraining Order*

We review the trial court's issuance of a protective order under the Domestic Violence Protection Act (DVPA; § 6200 et seq.) for abuse of discretion. (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264 (*S.M.*).) Under the DVPA, the trial court may issue a restraining order "for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if . . . an affidavit and any additional information provided to the court pursuant to Section 6306, shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300.)[6] The DVPA defines abuse as " 'any of the following: [¶] (a) Intentionally or recklessly to cause or attempt to cause bodily injury[;] [¶] (b) Sexual assault[;] [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another[;] [¶] (d) To engage in any behavior that has been or could be enjoined pursuant to Section 6320.' (§ 6203.) The behaviors outlined in section 6320 include 'molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly

---

[6] The DVPA defines domestic violence as abuse perpetrated against a number of persons, including any person "related by consanguinity or affinity within the second degree." (§ 6211, subd. (f).)

5

or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members.' (§ 6320, subd. (a).)" (*S.M.*, *supra*, 184 Cal.App.4th at p. 1264.)

To constitute abuse under the DVPA, conduct " 'need not be actual infliction of physical injury or assault.' [Citation.] To the contrary, section 6320 lists several types of nonviolent conduct that may constitute abuse within the meaning of the DVPA . . . ." *(In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1496 (*Nadkarni*).) This includes " 'disturbing the peace of the other party,' " which the court in *Nadkarni* explained "may be properly understood as conduct that destroys the mental or emotional calm of the other party." (*Id*. at p. 1497.) In *Nadkarni*, the wife made a facially sufficient showing of abuse within the meaning of the DVPA by alleging her former husband had destroyed her mental or emotional calm by "accessing, reading, and publicly disclosing the content of [her] confidential e-mails." (*Nadkarni*, at pp. 1498-1499.)

Thus, the trial court here could properly issue a DVPA restraining order in this case if it found reasonable proof of Mark's nonviolent "conduct," including disturbing Sandra's peace; overt threats of physical violence were not necessary. (*See Nadkarni*, *supra*, 173 Cal.App.4th at pp. 1498-1499.)

Absent a reporter's transcript of the hearing at which Sandra testified, we cannot entertain Mark's contention the trial court abused its discretion in granting her request for a restraining order. Instead, we presume official duties have been regularly performed (Evid. Code, § 664), and this presumption applies to the actions of trial judges (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1461-1462, fn. 5; *Olivia v. Suglio* (1956) 139 Cal.App.2d 7, 9 ["If the invalidity does not appear on the face of the record, it will be presumed that what ought to have been done was not only done but rightly done"]). Rather, we presume on this silent record that the trial court properly exercised its discretion by correctly applying the law and giving due consideration to the evidence

before it, including both the written submissions by the parties and the testimony Sandra gave at the hearing (see *Olivia*, *supra*, at p. 9), and that the evidence was sufficient to justify issuing the order (*Ehrler*, *supra*, 126 Cal.App.3d at p. 154).

## DISPOSITION

The order is affirmed.

RAYE , P. J.

We concur:

BLEASE , J.

HOCH , J.